BENJAMIN ELLIOTT, Administrator of SAMUEL W. CREASEY, Deceased, Appellant, v. GEORGE G. KEITH, Respondent.

Kansas City Court of Appeals, December 10, 1888.

1. Attachment: GROUNDS OF: MEANING OF WORDS "ABOUT TO REMOVE," ETC. The meaning of the words "about to remove," etc., in the attachment law of this state (R. S., sec. 398) is substantially this: If a purpose exists to remove and the scheme may be carried out in one, two, three or several weeks, or months, and if contemplated with a view to evade or delay creditors, the writ may be taken out. (Drake on Attachments [6 Ed.], sec. 108).

2. ——: PRACTICE : EXPLAINING OF TERMS IN INSTRUCTIONS : CASE ADJUDGED. The words of the statute on attachment (adopted in plaintiff's affidavit in this case) create a right. They have no technical significance and should receive the rendering given to them in common parlance. It is safer to adopt them *verbatim* in instructions, and trust the average understanding of jurors with a proper interpretation of them.

3. ——: PRACTICE: INSTRUCTIONS WHICH ARE MISLEADING: CASE ADJUDGED. Instructions which are calculated to mislead the jury and divert their minds from the proper issues (as in this case) ought not to be given.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

The case is stated in the opinion.

*Wallace & Chiles*, for the appellant.

(1) The court erred in saying to the jury in defendant's first instruction, that they must believe "that the defendant was not only about to remove out of the state," but "must also believe that defendant was preparing and intended to make an immediate removal." Under the law (R. S., 1879, sec. 398, sub-div. 6) under which this attachment was sued out, appellant was entitled to an attachment if the defendant was "about to remove out of this state, with the intent to change his domicile." The court makes a new law for this case, saying that the defendant must be preparing to make "an immediate removal." "About" means "near to in time," whilst "immediate" means "without intervention of time," which is quite a different rule from that laid down by the legislature. Under such a law as this, a creditor would have to wait until the debtor had taken such steps for the departure, that it would be too late to attach, by which the law which was enacted to give a useful remedy would be utterly powerless. (2) For the reasons urged in the point above, the court erred in modifying the third instruction of plaintiff by qualifying it with a reference to the erroneous instruction of defendant complained of in point 1. Such a modification took from it all its virtue and value to plaintiff. (3) The second, fifth, sixth and seventh instructions given by the court for defendant are not based on the issues made by the pleadings, and are for

that reason erroneous and misleading. It is especially wrong in jury cases. The causes for attachment are all pointing to the future, something that defendant was about to do, and his past transactions were in evidence to show, from his disposition of his property, stock, home, etc., that he was about to remove out of the state with the intent to change his domicile. The court treats these transactions already done as causes for attachment *per se*, and instructs the jury accordingly, which not only misleads the jury as to the true issues, but takes from their minds these transactions as they bear on the matter which is in issue. Such instructions are error. *Melvin v. Railroad*, 89 Mo. 106; *Railroad v. Conlon*, 92 Mo. 221; *Henry v. Rice*, 18 Mo. App. 497; *Storms v. White*, 23 Mo. App., 31; *Taylor v. Cable Co.*, 28 Mo. App. 552; *Fairgrieve v. Moberly*, 29 Mo. App. 141. (4) Even if defendant's instruction number two is considered as relevant to the issues as made by the pleadings it is erroneous in requiring of plaintiff direct proof of fraud. It should have been supplemented by the statement that the proof need not be direct but may be shown by circumstances indicative of a design to hinder, delay or defraud creditors. *Weinstein v. Reid*, 25 Mo. App. 41; *Burgert v. Borchert*, 59 Mo. 83. (5) For the same reason as urged in last point the eighth instruction given for defendant is erroneous. It states to the jury that "all his transactions and intentions are presumed to be consistent with honesty and fair dealing, and it devolves on plaintiff to show by a preponderance of testimony that they are otherwise," whereas, from these same "transactions" a jury might under the decisions deduce an inference of fraud. To say the least such instructions are misleading and mischievous. (6) Defendant's third instruction, which took from the jury all the evidence touching the sale of the "lease of the farm," after the attachment levied in the case, was erroneous. This "lease" was the equity of redemption of defendant in his home, and the sale of it within a few days of the attachment was direct evidence of defendant's intention of being about to change his domicile,

as well as evidence of his being about to convey, etc., his property which, under proper instructions, the jury might find to be coupled with a fraudulent intent. At any rate the evidence was proper for the jury to consider under the issues as made on the pleadings. (7) Taken together the instructions had a tendency to confuse and mislead the jury.

*J. H. McHatton* and *Graves & Aull*, for the respondent.

(1) Where a cause is tried in court below, on one theory, it cannot upon appeal be tried on another and different one. *Waddingham v. Waddingham*, 27 Mo. App. 596 ; *Fall v. Coal Co.*, 23 Mo. App. 217 ; *Noble v. Blount*, 77 Mo. 241 ; *Davis v. Brown*, 67 Mo. 313. (2) The court properly instructed the jury not to consider the sale of lease of the farm made after the attachment, because : (*a*) The cause was tried on the theory that he "had fraudulently disposed of," and "had fraudulently conveyed" his ·property. (*b*) See as to effect of sale, *Douglass v. Cissna*, 17 Mo. App. 646. (*c*) Appellant knew at the time of the attachment that respondent had the lease for sale and respondent offered it to him if he would take it, but appellant refused to take the lease. (3) The court properly granted instruction as to definition of domicil. *State ex rel. v. Dayton*, 77 Mo. 678. (4) As to construction of expression "about to remove" see 1 Wade on Attachment, sec. 101 ; *Lorrain v. Higgins*, 2 Chan. [Wis.] 116 ; *Brown v. Crenshaw*, 5 Baxt. [Tenn.] 564, where the following language is used : " One understands by this something more definite than that an event will happen. It is something looked for in the immediate future. The word is used to provide against impending mischief which requires the utmost expedition. to forestall, and it is in this light that the courts have construed it. Something more than mere apprehension of what is to transpire in the future is required." The word "immediately," when construed by the courts in connection with

legal proceedings, or acts, means "in a reasonable time," and does not mean "without intervention of time," as claimed by plaintiff. (5) The cause, under all the instructions, was fairly submitted to the jury, and there being an entire failure of proof on the part of plaintiff, the judgment for the defendant should be affirmed.

RAMSAY, J.—On September 5, 1887, plaintiff instituted suit before J. A. Prather, a justice of the peace of Lafayette county, on a note dated March 10, 1883, payable one day after date to S. W. Creasey, plaintiff's intestate, and filed an affidavit for an attachment in which he alleged as grounds of attachment: "1. That the defendant is about to remove out of this state with the intent to change his domicile. 2. That the defendant is about fraudulently to conceal, remove or dispose of his property or effects so as to hinder or delay his creditors. 3. That the defendant is about fraudulently to convey or assign his property or effects so as to hinder or delay his creditors." Property of defendant was attached and a trial was had before the justice on an issue raised by plea in abatement, which resulted in favor of defendant. Plaintiff appealed to the circuit court, where the cause was again tried, resulting in a verdict and judgment for the defendant, from the latter of which plaintiff has appealed to this court. On the trial in the circuit court the plaintiff introduced several witnesses who testified to statements made by defendant, at different times during the two months preceding the date of attachment, to the effect that he aimed to sell off his property and go to Washington Territory. To some he stated that he was not going until he could square up his debts. To others he simply spoke of the disposal of his property and his intention of going. One witness, D. L. Gordy, testified that he had several talks with defendant prior to the attachment and that defendant would speak about hearing from his son and going to Washington Territory, that he said he expected to go about the first of October, that Mr. Allison, Mrs.

Whitsett and Billie Lale were going. This witness stated that the parties named had gone, two of them having started from the first to the fifteenth of September and one on the seventeenth of that month. The plaintiff's evidence further showed that defendant had sold and disposed of some of his property; that he was heavily in debt'and was making sale of all his property; that when plaintiff and the constable went out with the writ of attachment defendant told them he was going to Washington Territory and wanted to sell to plaintiff his interest in the farm on which he was living; that plaintiff told him he would see if he could make the lease available; that defendant promised to meet plaintiff in Odessa that evening at four o'clock to make arrangements to turn over the property; that he did not go there, but plaintiff learned that defendant made it, the lease or interest in the farm over to another man. The defendant in his own behalf testified substantially that he was not making arrangements to go to Washington Territory, that he was contemplating a sale of his property and expected to divide it out among his creditors. He introduced a witness whom he had owed and paid in corn. It is not our purpose to state the evidence further than to show a basis for the instructions herein discussed.

The plaintiff's first claim here is that the court committed error in giving on behalf of defendant this instruction: "1. The court instructs the jury that before you can find for plaintiff on the charge that defendant was about to remove out of the state in order to change his domicile, you must believe from a preponderance of the testimony that the defendant was not only about to remove out of the state, but also that he had also the intention of remaining permanently out of the state with no intention of returning, and of making his permanent abode out of this state, and before you can find that he was about to do so you must believe from a preponderance of the testimony that defendant was preparing and intended to make an *immediate* removal."

The word which I have italicised is the point complained of. The first ground alleged in plaintiff's affidavit for attachment is, "that defendant is about to remove out of this state with the intent to change his domicile." It is couched in the very language of the statute and the question is here presented, what is the meaning of the words, "is about to remove?" The trial court evidently thought an explanation was required, when it said in this instruction, "before you can find that he was about to do so, you must believe \* \* \* defendant was preparing and intended to make an immediate removal." There is always danger in attempting to define or explain, in instructions, words which are ordinary and which possess no artificial or technical significance—nine times out of ten the effort complicates rather than simplifies. It is contended by plaintiff's counsel that this instruction reduces and narrows the meaning of the statute to such an extent that a creditor would have to wait until the debtor had taken such steps for departure that it would be too late to attach. It is argued that if the meaning of this ground of attachment is to be thus limited, a creditor would be compelled to remain quiescent until the debtor had loaded his wagon, hitched up his horses, mounted the seat, picked up the lines and raised his whip, before he could lawfully sue out an attachment. If the language used in the instruction leads to such a result, it should meet with disapproval. The word "immediate," as defined by Worcester, means, "having nothing intervening, either as to place, time or action." The word "immediately" means "instantly, directly, without delay, forthwith, just now." If we give to the word the meaning assigned to it by lexicographers, we can scarcely escape the conclusion that the illustration instanced by counsel is a fair one. The words of our statute, "about to remove," and similar words, have engaged the attention of law writers and courts. Waples on Attachments and Garnishments, at page 51, says: "Most of the statutes are rather vague in their use of the phrase, 'about to abscond.' About to do

so—when? Is it to-day, to-morrow or next week? Is it at some time before a judgment lien can be obtained by following up ordinary process? Perhaps no more definite period can be fixed upon, by way of construing the phrase, than that last suggested by the inquiry. If the debtor is about to go before the ordinary judgment lien can be created in due course, there is reason for creating the hypo thetical attachment lien at once." In *Bennett v. Avant*, 2 Sneed. [Tenn.] 152, a distinction is drawn between the word "absconding" and the words "about to abscond." The former is said to require *action* as well as *animus*, while the latter is complete without action. In *Myers v. Farrell*, 47 Miss. 281, which was a case of attachment and the ground alleged was, "that defendant was about to remove out of the state," etc., the trial court had instructed "that in order to sustain the allegation that the debtor was about to remove * * * the plaintiff must prove a design or purpose *speedily* to do so." And had refused to instruct, "that the jury may infer the purpose to remove, at the date of the attachment, from the previous expressions of such design and the acts of the debtor, nor is it necessary that the defendant purposed *immediate* removal, if from the evidence that the design existed and his actions purposed to carry out that design into execution, at some short time thereafter and as soon as he had prepared his affairs for removal, and without paying his debts." The italics in these quotations are my own. SIMRALL, J., speaking for the court, said the giving of the one and the refusal of the other were calculated to mislead the jury. He discussed at some length the meaning of the words, "about to remove," and while he asserted that "it would be hurtful in practice to attempt to declare precisely what is implied in the term, 'about to remove,'" and that "it is wiser and safer in the administration of justice, to leave each case as it arises to be governed by its own special facts," he further said, "if a purpose exists to remove, and the scheme may be carried out in one,

two, three or several weeks or months, and if contemplated with a view to evade or delay creditors, the writ may be taken out." The statute in that state required the removal to have been with intent to evade or delay creditors, which is not the case in this state. In Drake on Attachments (6 Ed., sec. 108), the case last cited and quoted from, is adopted as the law and it constitutes his text upon the subject.

The evidence in the case at bar undoubtedly tended to show that the defendant contemplated removing from this state to Washington Territory. If he had a fixed purpose to do so, and was making preparations to that end by disposing of all of his property and converting it into money at the time suit was instituted, ·the mere fact that he was not ready to step aboard the train, or to *instantly* start, ought not to defeat the attachment. Of course he must have been about to go, intending to go, etc., and it devolves upon plaintiff to establish that fact as contradistinguished to a reasonable belief upon plaintiff's part that the defendant was about to go. But we are of opinion that the instruction under consideration limited and narrowed the meaning of the statute too much. The words of the statute, adopted in this clause of plaintiff's affidavit for attachment, create a right. They have no technical significance and should receive the rendering given to them in common parlance. It is safer to adopt them *verbatim*, in instructions, and trust the average understanding of jurors with a proper interpretation of them. The second, fifth, sixth and seventh instructions on part of the defendant ought not to have been given. The three grounds of attachment put in issue by the plea in abatement charged that defendant "is about to remove," etc., "is about fraudulently to conceal," etc., "is about fraudulently to convey," etc. They correspond to the sixth, ninth and tenth grounds of attachment provided by the statute. The defendant was not charged with having done anything. While it was proper for plaintiff to introduce evidence of sales and disposition of property made by defendant for the purpose of throwing light on his intention to leave the

state (*Roos v. Clark*, 30 Mo. 296), such evidence could only be considered as affecting the issues presented by the pleadings. All of those instructions seem to have been based upon such evidence and a mistaken idea of what grounds of attachment were at issue. They certainly were well calculated to mislead the jury and divert their minds from the proper issues. It may be added that the fourth instruction asked by the plaintiff was properly refused by the court in that it contained the same error found in those given on behalf of defendant, which we have just noticed. With this objectionable feature eliminated, it, or an equivalent, ought to be given in all cases where a question of fraud is fairly raised by the pleadings and the evidence.

For the reasons herein given the judgment will be reversed and the cause remanded. All concur.