JESSE (JACK) WHITE, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION,—193 S. W. (2d) 60.

Kansas City Court of Appeals. March 4, 1946.

·Charles L. Carr, John W. Moore, Alvin C. Trippe, Hale Houts, Hogsett, Trippe, Depping and Houts, for appellant.

*Carl Borello* and *George Faso,* for respondent.

CAVE, J.,—This is an action for damages for personal injuries which was submitted solely upon humanitarian negligence. The jury found for the plaintiff for $3500; judgment was entered thereon, and defendant prosecuted this appeal.

The accident occurred a few minutes after ten o'clock, on the night of July 27, 1943, at 15th and Harrison Streets in Kansas City. 15th Street, an east-west thoroughfare, is 76 feet wide from curb to curb, with double street car tracks in the center, occupying about 18.3 feet of the street's surface. Harrison is a north-south street, and is 38 feet wide. At the time of the accident plaintiff was on foot crossing 15th Street from north to south in the pedestrian lane at the west side of Harrison Street, and the trolley bus was traveling east on the south side of 15th Street. There were no stop signs at this intersection.

Plaintiff testified that he left his home at 1409 Harrison, intending to go to his place of employment, which was located on the south side of 15th and west of Harrison; that when he reached the northwest curb of the intersection he stopped and looked east and west and, seeing no traffic for at least a block each way, started walking south across 15th Street. When he got to the middle of 15th, between the two street car tracks, "traffic began getting so thick I stopped", that when he stopped, "I looked and . . . seen these cars getting so doggone close I began to want to get across there. . . . I looked both ways." At that time he saw the bus approaching on the south side of 15th and about 12 or 15 feet from the south curb and 150 to 160 feet west of him. There was also an automobile just north and toward the

rear of the bus coming up the car tracks directly at him. There was no obstruction between him and the bus. When the bus was 150 to 160 feet from him, he started forward walking "like I always do, I might have been walking a little faster when the cars got around me that way. . . . Ordinarily I walk a pretty fair walk." He testified that he saw the bus "just a little bit before" he was hit, "about 15 feet from me." He was then within 7 or 8 feet of the south curb of 15th. When asked on cross-examination whether he saw the bus between the time he started from the center of the street and when he saw it about 15 feet from him, he answered "you are going to keep you eye on that bus. I didn's wait. . . . Well, I was looking south, but you are keeping your eye on that bus. . . . "Q. You never saw the bus from the time you first saw it 150 to 160 feet away until it was right on you? A. I seen it coming; I knowed it was coming."

Witnesses for plaintiff testified that the speed of the bus was from 12 to 15 to 20 miles an hour, and that it was 40 to 50 feet west of the plaintiff when he walked into its path; that the bus swerved toward the south when it was 50 to 60 feet west of Harrison; that traveling at a speed of 20 miles an hour the bus could have been stopped with safety in about 30 feet, and at 15 miles an hour from 23 to 25 feet, and at 12 miles an hour "possible 20 to 23 feet", and that these distances included reaction, estimated at one-third of a second. The right front part of the bus struck plaintiff, "one or two more steps and I would have been out of the way"; he was knocked 4 or 5 feet and the bus was stopped within 3 or 4 feet after striking him.

According to defendant's witnesses plaintiff suddenly ran directly in front of the bus when the front end was about even with or opposite him and that the operator did not thereafter have time to stop.

Defendant contends the court erred in giving plaintiff's instruction No. 1. We quote the pertinent hypothesis upon which the instruction authorized a verdict for plaintiff.

"The Court instructs the jury that if you find and believe from all the evidence that at the time mentioned in evidence plaintiff was walking south across the south half of 15th Street at the west side of Harrison Street, and if you find and believe that at that time the bus in question was proceeding east along the south side of 15th Street and was *immediately* approaching the plaintiff, if so, and if you find that when plaintiff had reached a point near the south curb of 15th Street he was then and there struck by said bus and thereby caused to sustain injuries, if so find, and if you further find and believe from the evidence that *immediately before being struck* by said bus, *plaintiff became and was in a position of imminent peril* and immediate danger from the approach and movement of said bus, if so, and that the bus operator saw or by the exercise of the highest degree of care could have seen plaintiff *in such position of*

*imminent peril* and immediate danger, if you so find, *in sufficient time, thereafter,* by the exercise of the highest degree of care and by the use of the means and appliances then at hand and with safety to the bus, its occupant and others if so, to have stopped the bus before striking *plaintiff,* if so, and the bus operator could have avoided striking plaintiff, if so, but negligently failed to do so, if you so find, and as a direct result thereof plaintiff was struck and injured, . . . (Italics ours).

The error charged is that the instruction authorized a verdict for plaintiff if he got in a position of imminent peril *immediately before being struck;* that those words mean *without interval of time,* and that there was no evidence to the effect that the bus could have been stopped under such circumstances; that the instruction submitted a physical impossibility and was self-contradictory.

We think there is no doubt that plaintiff's evidence, if believed, made a submissible case under the humanitarian rule. The question presented is, did instruction No. 1 properly submit the issues? In the very recent case of State ex rel. v. Bland, 191 S. W. (2d) 660, the court en banc, in effect, overruled some prior decisions and reaffirmed the "formula" enumerating the constitutive facts of a cause of action under the humanitarian rule. One of the essential elements of a humanitarian case is that the peril must arise and be discoverable in time for defendant to avoid the collision. This instruction, contrary to any called to our attention or any we have found after diligent search, fixes the *time* of plaintiff's imminent peril at *immediately before being struck.* As used here, *immediately* refers to *time* and not *space* or *distance.* What is meant by *immediately before?* Webster's New International Dictionary, Second Edition, defines "immediately", when referring to time, as meaning "without interval of time"; however, that strict definition is not always applicable, in legal contemplation, when the word is used in a contractual obligation or is referring to some act to be performed; under such circumstances it may be construed to mean "in a reasonable time." But when used to indicate the absence of time between two events it has been construed to mean *at once, forthwith, instantaneously, instanter, without delay, without interval or intervention of time.* 42 C. J. S. 391. In Elliott v. Keith, 32 Mo. App. 579, 585, this court held that the word "immediately" used in an instruction, defining "about to remove" property for the purpose of attachment, meant "instantly, directly, without delay, forthwith, just now," and was erroneous as unduly limiting the words "about to remove" as a ground for attachment so that "a creditor would have to wait until the debtor had taken such steps for the departure, that it would be too late to attach."

It has frequently been held that when a plaintiff submits his case on humanitarian negligence, it is error for defendant's instruction to submit that if the plaintiff came *immediately* in the path of defendant's

automobile, and in such close proximity thereto ·as to make it impossible for the defendant to prevent the collision, because such language too narrowly restricts the zone of imminent peril. [Prater v. Rausch, 344 Mo. 888, 891, 129 S. W. (2d) 910; Collins v. Beckman (Mo.) 79 S. W. (2d) 1052; Martin v. Fehse, 331 Mo. 861, 55 S. W. (2d) 440; Gray v. Columbia Terminals ·Co., 331 Mo. 73, 52 S. W. (2d) 809; Burke v. Pappas, 316 Mo. 1235, 293 S. W. 142.] It would seem that if an instruction -by defendant is erroneous, because it improperly limits the danger zone by use of the words *immediately in front of,* then it would follow that plaintiff's instruction is erroneous when it fixes the time of his peril *immediately before he is* struck, because it would put an impossible burden on a defendant and violate one of the fundamentals of the humanitarian rule, i. e., that the defendant must have sufficient time, with the means and appliances at hand, to prevent the collision after he discovers or should have discovered plaintiff in a position of peril. Defendant's liability under the humanitarian rule depends upon whether plaintiff's injuries were caused by negligent acts of defendant after he saw or could have seen plaintiff in a position of peril. [Phillips v. Henson, 326 Mo. 282, 289, 30 S. W. (2d) 1065.] There is no evidence that defendant's bus could have been stopped after plaintiff got *immediately* in front of it.

Plaintiff argues that he was in imminent peril from the time he left his standing position in the center of the street and walked toward the south curb until he was struck, because he was oblivious of his danger. The obvious answer to that is that plaintiff's own instruction does not submit such a theory because it fixes the time of his peril. We are also of the opinion that plaintiff's evidence, as above quoted, excludes obliviousness.

He also says that "obliviousness was not an essential element to a recovery because there was direct testimony that plaintiff was in front of the bus—directly in its path—when ·the bus was some 40 to 50 feet away, and it was then traveling 18 to 20 miles per hour . . . and under the evidence the bus could have been stopped within 30 feet." From this he argues that plaintiff was in position of inescapable peril at that time and, therefore, when the instruction defined the time of his peril as being "immediately before he was struck", it could be construed to mean "when the bus was 40 to 50 feet away." It is a matter of speculation and conjecture as to how the jury would construe that clause. It could be construed to mean the bus was 5-10-20 or 60· feet from him. A judgment cannot be sustained if supported· only by speculation and conjecture.

It is also argued that the instruction used language which would qualify the criticized part of the instruction. The language relied on for such qualification is, "and that the operator saw or by the exercise of ordinary could have seen plaintiff in *such position of peril in sufficient time thereafter*" for the operator to have stopped the

bus. He contends that the words "in sufficient time thereafter" qualified and placed a broader meaning to "immediately before he was struck." He says "when viewed in that light the jury no doubt understood it to mean 'in a reasonable time.'" It is mere conjecture whether the jury so understood. Furthermore, the words "in sufficient time thereafter" qualified the hypothesis of negligence, whereas the words "immediately before being struck", defined plaintiff's position of imminent peril as submitted to the jury in the preceding hypothsis of the instruction. The words "in sufficient time thereafter" correctly defined the failure to stop after plaintiff had reached a position of imminent peril which was, or could have been known, by the driver. Had the instruction not so defined the negligent failure to stop it would have authorized recovery as for primary negligence, contrary to the ruling in White v. Kansas City Public Service Co., 347 Mo. 894, 149 S. W. (2d) 375, 377. Furthermore, it will be observed that this part of the instruction used the words "such position of peril"; this referred to the peril theretofore defined in the instruction which was "immediately before he was struck", and eliminates the possibility of the instruction referring to the time when the bus was 40 or 50 feet away. It seems to us the instruction is inconsistent and self-destructive.

It is also contended that defendant's instructions "B" and "D" cured any defects in instruction No. 1. There is no merit in this contention. Those instructions merely advised the jury that their verdict should be for defendant if they found that the operator was not negligent in failing to avoid the accident after the operator saw or could have seen plaintiff in a position of imminent peril.

It was not necessary for plaintiff's instruction to designate the exact time or place where the position of peril began; that is for the jury to determine under the evidence. [Perkins v. Terminal RR Ass'n., 340 Mo. 868, 884, 102 S. W. (2d) 915.] But in the instant case plaintiff's instruction did fix the *exact time* when he was in peril and at a time when, under the evidence, defendant could not stop its bus. We are of the opinion instruction No. 1 was erroneous.

Defendant also contends that the court erred in overruling its motion for a directed verdict at the close of all the evidence, and in overruling its motion for judgment in accordance with the motion for a directed verdict; because plaintiff abandoned all theories of recovery not embodied in his instruction No. 1, and was not entitled to recover upon the theory therein submitted, citing Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. (2d) 91-94-5; Sec. 113, New Civil Code, Laws 1943, p. 387. The authorities cited are not applicable. It is true if plaintiff alleges several grounds of negligence and then instructs on only one, all others are abandoned; and if the evidence does not support the ground of negligence submitted, then a general demurrer at the close of the case, will raise that issue. But that is not

the situation in this case. Here the plaintiff did make a submissible case on humanitarian negligence but submitted that issue erroneously. He is entitled to retry the case and properly submit proven grounds of negligence.

It follows that the judgment should be reversed and the cause remanded. It is so ordered. All concur.