Joe VILLINES, Appellant,

v.

Walter R. VAUGHN, d/b/a Vaughn Funeral Home, Respondent.

No. 46971.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1959.

Motion for Rehearing or for Transfer to Court en banc Denied Jan. 11, 1960.

Edward F. Aylward, Robert A. Meyers, Kansas City, for appellant.

E. E. Thompson, Stephen B. Millin, Kansas City, for respondent Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

STORCKMAN, Judge.

This is a suit for damages in the sum of $47,500 for personal injuries alleged to have been received by the plaintiff while a passenger in an automobile which collided with an ambulance owned and being driven by the defendant. Plaintiff submitted his case on humanitarian negligence and the jury's verdict was for the defendant. On appeal the single question presented is with respect to an instruction given on behalf of the defendant. The parties prepared the transcript on appeal pursuant to S.Ct. Rule 1.06, 42 V.A.M.S. The use of the abbreviated form of transcript benefited all concerned.

The accident occurred on November 22, 1953, in Platte County at about 10:30 a. m. at the intersection of U. S. Highway 71 and a gravel road, known as the River Road. The plaintiff was a passenger in a Pontiac automobile driven by George Mings headed in a generally northern direction on the gravel road. There was a stop sign on the River Road for the regulation of northbound traffic entering upon Highway 71 and the River Road was slightly upgrade at that point. The defendant was driving a Cadillac automobile equipped as an ambulance on Highway 71 in what is described as a generally western direction at the intersection. A Mrs. Brown, a lady in her eighties, was bedfast on a stretcher, and two other ladies were seated in the rear portion of the ambulance. Mr. Pepper who was assisting the defendant was seated

on the right side of the front seat. While the ambulance was not on an emergency call, both of its red lights were on. Highway 71 was a new concrete slab, 22 to 24 feet wide, carrying two-way traffic. The highway was clear of other traffic at the time and was level for about a half mile east of the intersection. That section of Highway 71 had only been open for about two weeks and its shoulders, about 10 or 12 feet wide, were newly finished and wet.

The plaintiff testified that he and Mings had started on a hunting trip. The Pontiac automobile in which they were riding was brought to a stop at the highway sign with its front end about 5 feet from the south edge of the pavement of Highway 71. The plaintiff and Mings both looked to the east and the plaintiff saw the defendant's ambulance at least 300 yards away. The Pontiac proceeded onto Highway 71 and when it was at approximately the center line or a little over it, the motor "died" and could not be started. The plaintiff again looked to the east and saw the ambulance about 200 yards away. The ambulance did not stop and it sideswiped the right front part of the Pontiac and then went off the pavement onto the shoulder. Plaintiff was unable to estimate the speed of the ambulance, but testified it was on its own side of the highway before the impact. Plaintiff read into evidence parts of defendant's deposition in which the defendant testified in substance that he first saw the Pontiac when he was about 300 to 400 feet east of the intersection and traveling at a speed of about 60 miles per hour. The Pontiac was then on the gravel road about 30 feet south of the intersection and barely moving. When the defendant first saw the Pontiac, he did not think it was going to stop and he slowed the ambulance down to about 50 miles per hour in about 100 feet. This brought the defendant to within 200 or 300 feet of the intersection at which time the ambulance could have been stopped in about 200 feet. The Pontiac did not come to a full stop.

At the trial the defendant testified that when he was a little over 300 feet from the intersection he saw the Pontiac about 30 feet to the south of Highway 71. He wasn't able to judge its speed but it wasn't going fast. There was a stop sign on the gravel road about 12 or 15 feet south of the pavement. The defendant honked his horn three or four times and slowed down by applying his brakes. At first he didn't think the Pontiac was going to stop, but when it came within 5 feet of the highway it hesitated and it could have come to a complete stop. The defendant then thought the Pontiac was going to stop and he released his brakes and accelerated. When the Pontiac was less than 100 feet from the defendant, it came across the highway in front of him and never stopped again before the collision occurred. At the time of the collision, the right wheels of the ambulance were off the north edge of the pavement. The collision took place 5 or 6 feet north of the center line of the pavement. The left front fender of the ambulance struck the right side of the Pontiac about halfway from the front bumper and the hub of the right front wheel. The ambulance angled forward across a ditch and up on the bank, traveling about 60 feet from the point of impact until it stopped.

On behalf of the defendant, Mr. Pepper testified that the Pontiac came to a stop before going onto the highway but then pulled directly in front of the ambulance when it was about 75 to 100 feet away. Robert Gradsik, who was driving his automobile behind the Pontiac, testified that he saw Mings, the driver, take a drink out of a bottle as he was driving along the gravel road. Gradsik testified that the Pontiac came to a stop and then went directly in front of the ambulance when the ambulance was about 75 or 100 feet away. Roscoe Laurie, a member of the Missouri State Highway Patrol, who arrived after the accident, testified that neither the plaintiff nor the driver of the Pontiac appeared to be normal; their walk was not too steady,

their speech was incoherent, their movements were not rational, and he concluded that both of them were drunk.

In determining the propriety of giving defendant's Instruction No. 6, the reviewing court must give effect to the evidence most favorable to the defendant, the party who offered the instruction. Fantin v. L. W. Hays, Inc., Mo., 242 S.W.2d 509, 511 [2]; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461 [4]; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892, 896 [5]. Therefore, so far as the sole cause instruction to be reviewed is concerned, we must consider that the Pontiac automobile was brought to a stop on the gravel road about 5 feet south of the pavement of the highway; that the plaintiff and his driver looked to the east and saw the approaching ambulance; that the Pontiac automobile was started forward and driven onto the pavement and toward the path of the approaching ambulance when it was 75 to 100 feet away; that the Pontiac continued its course without stopping, and the collision occurred 5 or 6 feet north of the center line of the pavement when the right wheels of the ambulance were off the pavement onto the muddy northern shoulder. As stated in the Fantin case, 242 S.W.2d 511: "The plaintiff's evidence extended the zone of peril and the defendants' evidence cut the zone of peril down and each party was entitled to hypothesize his evidence and view of the situation for the jury's choice."

Counsel properly conceded in oral argument that Instruction 6 was not a model of conciseness and clarity. There is no need to set it or the other instructions out in full. After requiring a finding of the location of the automobiles on the highway Instruction 6 continues: "and if you further find that as the said Pontiac automobile approached the paved portion of U. S. Highway No. 71 and when it was within a few feet of the south edge of said paved portion of the highway, that the driver thereof, George W. Mings, brought the said

Pontiac to a stop or a momentary pause, if you so find, and if *you further find that immediately thereafter the said Mings operated said automobile onto the paved portion of said highway and directly and immediately into the path of the approaching ambulance operated by defendant, Mr. Vaughn, if you so find, at a time when there was immediate danger of a collision between said Pontiac and said ambulance* if the Pontiac was operated upon the paved portion of said highway, * * *." The plaintiff chiefly complains of the part of the quotation which we have italicized. The instruction then at length hypothesizes facts designed to establish a duty on the part of Mings to have discovered the approaching ambulance, a perilous situation, his ability to avoid the collision, his failure to do so, negligence on the part of Mings, that the acts and conduct on the part of Mings was the sole cause of the collision, the inability of defendant to avoid the collision, and a lack of any negligence on the part of the defendant. The instruction concludes with a direction to return a verdict for the defendant if the facts were so found.

Plaintiff's main verdict-directing instruction, No. 1, on humanitarian negligence requires a finding of the existence of imminent peril, the defendant's duty to discover the plaintiff in such position, his ability to stop the vehicle or change its course, and his failure to do so and resulting negligence. It concludes with the following admonition concerning antecedent negligence: "and this is true even if you further find that plaintiff or the Pontiac driver was negligent in getting into such peril, if there was such peril, and regardless of whether you believe the Pontiac driver or plaintiff was sober or not."

Instruction No. 7 given on behalf of the plaintiff was designed to counter the defendant's sole cause instruction. In substance it told the jurors that if they found the operator of the Pontiac and the defendant were both negligent and if they found

that the negligence of the defendant and Mings directly concurred and combined in causing the collision, then the jury would find the issue of sole cause in favor of the plaintiff and against the defendant.

The plaintiff states his first claim of error regarding Instruction No. 6 as follows: "The use in said instruction of the language 'immediately' and 'immediately into the path of the approaching ambulance', improperly narrowed the zone of imminent peril." The plaintiff does not contend that the zone of imminent peril was enlarged by reason of obliviousness. See Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495. Apparently the driver of the automobile did not testify; at least, his testimony is not before us. Plaintiff's testimony dispels any suggestion that he or his driver host was oblivious to the approach of the defendant's ambulance. He testified that he looked to the east and saw the ambulance approaching and that Mings, the driver, also looked in both directions. The line of vision to the east was unobstructed for about one-half mile.

The plaintiff leans most heavily on Prater v. Rausch, 344 Mo. 888, 129 S.W.2d 910, 911, in which case the plaintiff did not see the defendant's car until just before it struck the one in which she was riding. Defendant's converse instruction on plaintiff's submission of humanitarian negligence used the hypothesis that if "the automobile in which plaintiff was riding was driven immediately in the path of defendant's automobile, and in so close proximity thereto as to make it impossible for the defendant to prevent" the collision. It was held that the word "immediately" as there used referred to space or distance and that the "immediately in the path of defendant's automobile" too narrowly restricted the zone of imminent peril. The plaintiff also cites White v. Kansas City Public Service Co., 239 Mo.App. 571, 193 S.W.2d 60, 61, in which plaintiff's instruction authorized a recovery if plaintiff got into a position of imminent peril "immediately before being

struck" was held erroneous. And Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60, 65, held a sole cause instruction too restrictive which used the phrase "drove in front of and in close and dangerous proximity to the bus * * *."

The instruction in the present case is not in the same category with those found erroneous in the cases cited. Instruction No. 6 requires a finding that the Pontiac automobile was halted at the stop sign on the gravel road and that "immediately thereafter the said Mings operated said automobile *onto paved portion of said highway* and directly and immediately into the path of the approaching ambulance * * * when there was immediate danger of a collision". Words equivalent to those italicized do not appear in the instructions considered in the cited cases. This occurred, according to defendant's evidence, when the ambulance was 100 feet or less from the Pontiac and traveling about 50 miles per hour. There is no contention that imminent peril existed while the automobile was stopped on the gravel road, and Instruction No. 6 permits the jury to find the plaintiff entered such position of peril at a time when the Pontiac car started forward again and moved onto the paved portion of Highway 71. The instruction makes several other references to the operation of the Pontiac automobile upon "the paved portion" of the highway. Also the instruction in the latter part requires the jury to find that the defendant "could not, by the exercise of the highest degree of care, have seen and realized plaintiff and the automobile in which he was riding were in a position of imminent peril, in time thereafter" to have avoided the collision. This imposes upon defendant without limitation the full burden of discovering such peril.

The words "immediate" and "immediately", as shown by the cited cases and dictionary definitions, have the connotation of not being distant or separated either in time or space. How they were used and were

likely to be understood must be determined from their context. We must consider how a jury of average men, not skilled grammarians, would understand the words in context and as applied to the evidence. The use of the words "immediate" and "immediately" did not in the circumstances of this case tend to narrow improperly the zone of imminent peril. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 468 [18]. See also Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S.W.2d 698; Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S.W.2d 200; Lynn v. Kern, Mo., 323 S.W.2d 726; and Payne v. Smith, Mo., 322 S.W.2d 764.

■ Next the plaintiff contends that Instruction 6 "injected the antecedent negligence of plaintiff and plaintiff's driver into a case submitted solely on the humanitarian theory." The plaintiff again cites Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60, in which an instruction was held erroneous because of the emphasis placed upon the failure of the driver of the automobile in which plaintiff was a passenger to observe a stop sign before going onto the street where the collision with the defendant's bus occurred. In the present case the instruction credits the driver with making the required stop and deals only with the negligence of the driver after moving forward and going onto the pavement and into the path of the ambulance. Nor is the cited case of Williams v. Miller, Mo., 321 S.W.2d 452, controlling. In the Williams case an instruction was held erroneous because of its reference to the plaintiff's running in front of a bus between plaintiff and the defendant, which running occurred prior to the time the plaintiff entered the zone of peril.

In the recent case of Rosenfeld v. Peters, Mo., 327 S.W.2d 264, 267, this court, in discussing the essential elements of a sole cause instruction in similar circumstances, stated that if the defendant had drawn his instruction so as to require the jury to find that as the defendant approached close to the crossover the driver of the car in which plaintiff was a passenger "suddenly drove his car from a stopped position on the crossover onto the highway closely in front of defendant's car; and then required a finding that this was negligence of Siegel [the driver] which was the sole cause of the collision and that defendant was not guilty of any negligence submitted in any other instructions, it would have been a good sole cause instruction."

The plaintiff has not demonstrated that the defendant's instruction injected antecedent negligence of the plaintiff or his driver; we are unable to so find. Additionally, plaintiff's Instruction No. 1 adequately advised the jury that plaintiff could recover regardless of antecedent negligence.

■ Lastly the plaintiff says Instruction No. 6 is "confusing, misleading, contradictory and an improper statement of the law in that said instruction permits the jury to find that plaintiff's driver's failure to avoid the collision was the sole cause thereof." We find no basis for the application of Harbourn v. Katz Drug Co., Mo., 318 S.W. 2d 226, cited by plaintiff. Plaintiff indicates that the negligence of his driver had no place in the case and that the only proper question was whether the defendant could have avoided the collision. His argument would nullify the defense that the act of the third party was the sole cause of the injury. The instruction is not a misstatement of the law nor reasonably likely to confuse or mislead the jury. Fisher v. Williams, Mo., 327 S.W.2d 256, 260 [2]. Concurrent negligence was adequately covered by plaintiff's Instruction No. 7.

We have examined all the assignments of error and find them without merit.

The judgment is affirmed.

All concur.