Robert E. DRESSLER, Jr., Plaintiff-Respondent,

v.

Earl L. LOUVIER, Defendant-Appellant.

No. 52207.

Supreme Court of Missouri, En Banc.

Dec. 12, 1966.

Henry G. Eager, Donald H. Loudon, I. I. Ozar, Kansas City, William E. Turn-age, Liberty, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for respondent.

William J. Peters, Fred J. Freel, Sheridan, Sanders, Peters & Carr, Kansas City, for appellant.

HENLEY, Judge.

This is an action for damages for personal injuries growing out of the collision of two automobiles. Judgment was for plaintiff for $6,000. Defendant appealed to the Kansas City Court of Appeals. That court reversed and remanded for a new trial because of error in the giving of an instruction on humanitarian negligence. On application of plaintiff, we ordered the case transferred to this court. It is to be determined here " * * * the same as on original appeal." Article V, § 10, Constitution of Missouri, V.A.M.S.; Civil Rule 84.05(h) V.A.M.R.

At the close of plaintiff's case and again at the close of all the evidence defendant moved for a directed verdict. Both motions were overruled.

The case was submitted to the jury October 7, 1964 (prior to the effective date of MAI) on both primary and humanitarian negligence.

Defendant briefs five points, only three of which we need mention and consider, viz., that the court erred: (1) in overruling his motions for directed verdict, because plaintiff was guilty of contributory negligence as a matter of law and because plaintiff failed to make a submissible humanitarian case; (2) in permitting an amendment of the petition after the close of all the evidence to add an allegation of humanitarian negligence; (3) in giving an erroneous instruction on humanitarian negligence.

Because of defendant's claim of error in overruling his motions for directed verdict, it is necessary that we make a full statement of the facts. We review the evidence in a light most favorable to plaintiff,

giving him the benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids plaintiff's case. Terminal Warehouses of St. Joseph, Inc. v. Reiners, Mo., 371 S.W.2d 311, 312 [1].

The collision occurred shortly before the noon hour Saturday, March 14, 1964, on Maple Boulevard in Kansas City, Missouri. It was a bright, clear day; the surface of the street was dry.

Maple Boulevard runs in a north-south direction. It has a blacktop surface with a white line designating its center and is forty feet wide from curb to curb in the 400 block where the collision occurred. Missouri Avenue intersects Maple 200 to 250 feet north of the scene of the collision and Maple becomes Lexington Avenue 400 to 450 feet north of Missouri Avenue.

Immediately prior to the collision, plaintiff's 1961 model Chevrolet four-door sedan was parked parallel to the curb on the west side of Maple headed south, approximately in front of 418 Maple. Two other automobiles were similarly parked, one in front of and one behind plaintiff's automobile. Automobiles were also parked at the curb on the east side of Maple, but opposite the point of the collision there was a vacant space of approximately 45 feet along the east curb.

Plaintiff lived on the east side of the street, at 419 Maple. Leaving his residence, he walked across the street and stopped for a few minutes to talk with a friend washing his automobile in the driveway between the curb and sidewalk a few feet south of the automobile parked in front of plaintiff. From there he walked back into the street and north to the driver's side of his automobile. Standing in the street beside his car he could and did see north up Maple 600 to 700 feet. He saw no automobiles approaching from the north, or from the south. He then got in his automobile from its left side and started the motor. His car was equipped with a special inside rearview mirror, about 15 inches long.

Looking in this mirror he could and did see back north beyond Missouri Avenue, a total distance of approximately 250 feet, but could not see back to Lexington. He testified that no traffic was approaching from the north. Putting his car in reverse gear, he backed up, looked through the raised windows to his left, could see as far back as Missouri Avenue, and saw no vehicle approaching from the north. At a speed he estimated at one to two mph he pulled out from the curb headed in a southeasterly direction onto the traveled portion of Maple and stopped to look again. At this point a portion of the rear of his car was still in the parking space and its left front corner was, according to his estimate, three or four feet from or west of the centerline. Stopped in this position, he looked again and saw defendant's 1964 Chevrolet about 90 feet away headed toward him in the southbound lane traveling at a speed he estimated at 45 to 50 mph. He said he "froze" and " * * * couldn't do anything else." Plaintiff said he " * * was stopped a full two seconds" in this position before defendant struck him; another witness estimated that plaintiff " * * * was at a complete standstill * * * four seconds." The defendant applied his brakes and skidded or slid into plaintiff's automobile. Pictures of the two vehicles indicate, and testimony of the witnesses is, that the right front corner of defendant's automobile struck the plaintiff's automobile at about the forward edge or hinge end of its left front door.

Plaintiff further testified that the elapsed time between his getting in his parked car and the collision was eight or nine seconds, but that this was " * * * an approximate guess * * *." He testified that when he saw defendant's automobile 90 feet north of him its left side was two feet west of the centerline; that it did not change its course; that it slid straight into him, its speed being reduced to about 30 or 35 mph at the moment of impact; that upon impact defendant's car veered off to its left and came to a stop with most of its body on the

east side of the white line; that his car was knocked sideways to the west three or four feet; that no other vehicles were traveling Maple at the time in either direction; that had defendant swerved his automobile to its left one and one-half or two feet the collision could have been avoided; that defendant could have swerved his car sufficiently to its left in the time and distance he had available from the instant plaintiff saw him and could have gone around plaintiff's car in what plaintiff described as 25 feet of unobstructed street east of him.

According to measurements made shortly after noon that day, defendant's automobile laid down solid uninterrupted skid marks for a total distance of 40½ feet, the first 31½ feet of which were straight to what one witness said was the point of impact; the last nine feet veered off to the southeast across the centerline. North of the solid skid marks there were other broken skid marks two or two and one-half feet in length, and then a skip of undisclosed distance to the point where the solid skid marks began. Other skid marks measuring one foot by three and one-half feet, obviously from plaintiff's car, were found leading off southwest from what was indicated as the point of impact.

Defendant testified that on the morning of the collision he drove onto Maple from Lexington Avenue and was headed south; that Missouri Avenue intersects Maple 200 to 300 feet north of the point of collision; that Maple is "fairly level," and there was nothing to obstruct visibility in either direction; that visibility is good from Missouri Avenue to the point of collision; that his speed when he first saw plaintiff's automobile pulling out from the curb was 20–25 mph; that immediately upon seeing plaintiff's automobile he " * * * went for the brakes and tried to steer out of his way;" that when he first saw plaintiff's car it was pulling out from the curb and was " * * * right on top of me;" that plaintiff's car was pulling out at average speed, about " * * * five miles an hour, or two

miles, or three miles," and did not stop prior to impact; that when he first saw plaintiff's car it was five to ten feet from him, or " * * * perhaps a car length;" that he applied his brakes and " * * * steered to the left as hard as I could;" that he skidded into plaintiff's car with his brakes still applied and at impact his speed had reduced to 10–15 mph; that at impact the plaintiff's car was about half out of the parking space and about two or three feet from the centerline; that there was no other moving traffic in the area.

■ We conclude that plaintiff made a submissible humanitarian case; therefore, we need not consider whether plaintiff was guilty of contributory negligence as a matter of law. The court did not err in overruling defendant's motions for directed verdict.

As stated the collision occurred while plaintiff's automobile was blocking all but three or four feet of the southbound traffic lane. Plaintiff says he was stopped in that position a full two seconds; another witness said four seconds. Defendant says plaintiff was not stopped; that he was moving. Defendant had the same unobstructed view to the south that plaintiff had to the north once plaintiff moved out to the alleged stopped position. Plaintiff could, of course, be in a position of imminent peril in the described stopped position and a jury could find that he was in that position for four seconds prior to the collision. Plaintiff estimated that defendant was 90 feet north of him when he first saw defendant's vehicle with its left side two feet west of the centerline traveling 45–50 mph. Defendant's testimony was that he was traveling 20–25 mph when plaintiff pulled out in front of him not more than a car length away. It is undisputed that no traffic was approaching from the south and that 25 feet of the width of Maple was available to the east of plaintiff for defendant's use in passing, a part of which was used by defendant in veering off to the southeast after impact. At 50 mph de-

fendant would have been traveling 73.4 feet per second; at 25 mph, 36.7 feet. Plaintiff testified that defendant could have swerved, in the time and distance available, to his left two feet and thereby have avoided the collision. We find that under all the circumstances a jury reasonably could have found that defendant saw, or could have seen, plaintiff in a position of peril in time thereafter to have swerved to the left and avoided the collision. We, therefore, hold that plaintiff made a submissible humanitarian case on defendant's alleged failure to swerve to his left. Perry v. Dever, Mo., 303 S.W.2d 1; Stradford v. Bluefeather, Mo., 384 S.W.2d 541, 543–544 [2, 4].

■ Did the court err in permitting plaintiff to amend his petition to allege humanitarian negligence after the close of all the evidence? Plaintiff went to trial on his first amended petition alleging primary negligence only. At the close of the evidence he asked leave to amend to allege humanitarian negligence. Leave was granted over defendant's objection. Defendant seems to complain that he was surprised by plaintiff's request to amend. He asserts that he was not prepared to meet this new allegation coming at the close of all the evidence rather than at the close of plaintiff's case; that he would have been entitled to a continuance to meet this issue had plaintiff sought so to amend earlier in the trial. The record discloses that defendant was notified at least a week before trial that plaintiff would add an allegation of humanitarian negligence to his petition and submit on that issue. Counsel for plaintiff so stated and counsel for defendant did not deny it. The court remarked that apparently the request was no surprise to defendant; defendant made no claim of surprise; defendant made no request for a continuance.

We hold that under these circumstances the court did not abuse its discretion in permitting plaintiff to amend his petition

to conform to the proof. Civil Rule 55.54, V.A.M.R.

■ Defendant contends that the court erred in giving instruction No. 3 on humanitarian negligence, because: (1) there was no evidence to support a finding that defendant could have avoided the collision by swerving, and (2) the instruction is contradictory, inconsistent and self-destructive in that it permitted a recovery if the jury found that plaintiff was in a position of imminent peril *immediately* prior to the collision.

We have already ruled defendant's first objection to the instruction. Defendant contends that the instruction is prejudicially erroneous, because it is inconsistent and self-contradictory in that it permits the jury to find that plaintiff's peril arose when it would have been impossible thereafter, in point of time, to have avoided the collision. He argues: (1) that one of the essential elements of a humanitarian case is that the peril must arise and be discoverable in time for defendant thereafter to avoid the collision, (2) that "immediately prior to the collision" refers to time, (3) that "immediately" means without interval of time; therefore, to authorize the jury to find that plaintiff was in peril immediately prior to the collision in effect eliminates or destroys the essential time element afforded defendant within which to act to avoid the collision. He contends that in this respect the instruction is inconsistent and self-destructive, citing White v. Kansas City Public Service Co., 239 Mo.App. 571, 193 S.W.2d 60. Plaintiff contends that this court " * * * distinguished and implicitly overruled or at least limited * * * " the White case in Villines v. Vaughn, Mo., 330 S.W.2d 782. This court did not in *Villines* implicitly overrule or limit *White*, but it did, at l. c. 786, distinguish *White* from *Villines* in these words: "The instruction in the present case is not in the same category with those found erroneous in the cases cited."

The parties agree that the phrase "immediately prior to the collision," as used in this instruction, refers to time rather than space or distance. Webster's Third New International Dictionary defines "immediately," when referring to time, as meaning "without interval of time." In 42 C.J.S., p. 391, it is said that "The word 'immediately,' in strictness, excludes all mesne time, is generally used to indicate the absence of time between two events * * *." These words of the Court of Appeals in White, supra, are particularly appropriate and applicable in the instant case: " * * * plaintiff's instruction is erroneous when it fixes the time of his peril *immediately before he is struck,* because it would put an impossible burden on a defendant and violate one of the fundamentals of the humanitarian rule, i. e., that the defendant must have sufficient time, * * *, to prevent the collision after he discovers or should have discovered plaintiff in a position of peril."

The court erred in giving instruction No. 3. We note again that this case was tried before the effective date of MAI. It is ruled under the authorities applicable at the time of trial and is not to be considered as affecting, in any manner, instructions prescribed for use by MAI.

The judgment is reversed and the cause remanded.

STORCKMAN, C. J., DONNELLY, HOLMAN, and HYDE, JJ., and WOLFE, Special Judge, concur.

FINCH, J., dissents in separate dissenting opinion filed.

EAGER, J., not sitting.

FINCH, Judge (dissenting).

I respectfully dissent from the majority opinion herein. In my judgment, Instruction No. 3 was not prejudicially erroneous.

It will serve no useful purpose to analyze and discuss the instruction in detail because cases now are tried under instructions prescribed by MAI. Consequently, I observe simply that the term "immediately" was used in connection with the question of whether plaintiff was in a position of imminent peril. The instruction commences, "The Court further instructs you that if you find and believe from all the evidence that immediately prior to the collision, Dr. Dressler was in a position of imminent peril * * *." If the term "immediately" has the effect of limiting, it limits the zone of peril, which would be to the detriment of the plaintiff, not defendant.

MAI Instruction 17.15 requires the jury to find, "First, plaintiff was in a position of immediate danger of being injured * * *." If the term "immediate" is not misleading and is not erroneous in MAI 17.15, it is not misleading or prejudicially erroneous in Instruction No. 3.

I would affirm the judgment.