**Clifford Lee BECKER (Plaintiff),
Respondent,**

v.

**Robert O. CLEMONS (Defendant), Appellant.**

No. 29473.

St. Louis Court of Appeals.

Missouri.

Nov. 7, 1956.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant.

J. O. Swink, Farmington, Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for respondent.

ANDERSON, Presiding Judge.

This is a negligence action wherein plaintiff, Clifford Lee Becker, sought to recover damages for personal injuries and damage to his automobile alleged to have resulted from a collision between said automobile while being operated by plaintiff, and an automobile owned and operated by defendant. Defendant filed a counterclaim seeking recovery for damages to his person and to his automobile. The trial resulted in a verdict and judgment for plaintiff on plaintiff's cause of action in the sum of $6,500. The issues raised by the counterclaim were not submitted to the jury. From the judgment for plaintiff, defendant has appealed.

The collision occurred April 1, 1954, on Highway "B", also known as Loughborough Road, about three miles west of Doe Run, Missouri. Plaintiff was driving a Buick automobile. In said automobile with him were Fred Watkins and Roy L. Martin. Defendant was driving a Plymouth automobile. With defendant was his brother, James Clemons. Highway "B" was paved with "blacktop" and was eighteen feet wide. There was no center line marked on the roadway. Plaintiff and his companions were traveling west at the time. Defendant and his brother, just prior to the collision, were proceeding eastwardly toward Doe Run. Immediately prior to the accident plaintiff was traveling 30 or 35 miles per hour. The record does not show defendant's speed at the time.

The terrain of Highway "B" near the place where the collision occurred was shown by the evidence to be as follows: East of the point of collision a private road led from Highway "B" northwardly toward the home of the Penberthys. Opposite this road was a private road running southwardly to the home of Mr. West. East of these private roads Highway "B" was the crest of a hill. West of the crest of the hill Highway "B" curves gradually to the right for some distance, then at a point west of the point of collision the road makes a sharp curve to the right. One traveling west, as was plaintiff, could see from the crest of the hill to the sharpest point of the curve. The distance from the crest of the hill to the sharpest point of the curve is approximately 190 feet. The automobiles were found locked together about 100 feet east of the sharpest point of the curve, and 90 feet west of the center of the intersection of the private roads and Highway "B".

Shortly after the accident a highway patrolman, James C. Englehart, appeared on the scene. The automobiles had not been moved when Englehart arrived. Mr. Englehart measured the distances the wheels of the vehicles were from the edge

of the pavement. The plaintiff's automobile was headed west, and defendant's car east. The measurements made by the trooper were as follows: The left rear wheel of the Plymouth (defendant's car) was 8 feet from the north edge of the pavement; the right rear wheel 4 feet 6 inches from the south edge of the pavement; the front left wheel was 7 feet from the north edge of the pavement; and the right front wheel was 6 feet 6 inches from the south edge of the pavement. The right front wheel of the Buick was 5 feet from the north edge of the pavement; the left front wheel was 8 feet 6 inches from the south edge; the left rear wheel was 9 feet 6 inches from the south edge; and the right rear wheel was 3 feet 6 inches from the north edge of the blacktop. Mr. Englehart testified that the fenders would extend 3 inches beyond the wheels, and that measuring from the center of the wheel the left front of plaintiff's car was over the center line from 15 to 18 inches. Apparently Mr. Englehart's measurements were from the hub cap or center of the wheel.

From Mr. Englehart's measurements it would appear then that the left front wheel of defendant's car was two feet north of the center line, and the left rear wheel was one foot north of the center line. It would also appear that the left front wheel of plaintiff's car was 6 inches south of the center line and the left rear wheel 1 foot 6 inches north of the center line. There were no "skid marks" or "push marks" on the highway. On the south side of the highway the shoulder was two or three feet wide. To the north the shoulder was 8 feet wide. Mr. Englehart stated that traffic at the time was passing on the north side partly on the shoulder and partly on the blacktop. The automobiles had come together head on about 100 feet east of the sharpest point of the curve and, according to Mr. Englehart, "the noses of the two cars were sitting approximately in the middle of the road."

On direct-examination plaintiff testified that immediately before the accident the right side of his automobile was "a foot and a half from the shoulder on the right-hand side *. * * from the edge of the blacktop." He further testified that immediately before the accident he saw defendant's car directly in front of him. He could not state how far away defendant's car was at that time, but stated: "I applied my brakes, that's all I had time to do."

On cross-examination plaintiff testified that he did not see the automobile approaching, but did see the parking light on it, and that it was directly in front of him. He stated: "and I applied my brakes and that's the last thing that I remember. * * I only applied by brakes." Plaintiff did not swerve in either direction. Plaintiff was then asked where he was with reference to the road leading to Mr. West's house when he saw the light on the defendant's car. His answer was: "Well, I couldn't say. * * * I couldn't say exactly where I was at in direction." He further testified:

"Q. Now, as to the sharpest point of this curve there, you, * * *. other than what somebody told you, don't know where this collision occurred do you? A. No, no I don't know where the collision occurred.

* * * * * *

"Q. Taking the center of this road that runs down to Leslie West and across to Penberthys * * * where were you with reference to that point there when you say your automobile was about a foot and a half from the righthand curb or righthand edge of the pavement * * * were you towards the Elvins side * * * or were you to the Doe Run side when you said your automobile was about a foot and a half from the edge of the pavement? A. Well, I couldn't say where I was at. * * * I don't know where I was in the direct position, no.

"Q. You don't know whether you were beyond that point towards Elvins? A. No, sir.

"Q. Or whether you were back toward Doe Run? A. No, sir. I'd rather think I'd be beyond it if any.

"Q. Well, that's just thinking, you don't know? A. No, I don't know.

"Q. In other words, that would be just guess work and speculation, is that right Mr. Becker? A. Yes, sir. * * *"

Roy L. Martin, who was riding in the rear seat of plaintiff's car, testified for plaintiff. When asked what he remembered about the accident, he replied:

"I remember the car, the front end of the car going down like he had applied his brakes, and then when I raised up I seen this car run into the front. * * * that's all I know. * * * I was just kind of addled. I didn't get knocked out. I was throwed into the floorboard of the car.

"Q. How close was this oncoming car when you saw it? A. I'd say it was right at us.

* * * * * *

."Q. Did you have an opportunity to observe on which side of the road either car was? A. No, sir.

* * * * * *

"Q. Now, as far as you know, the cars went together head on? A. That's correct. * * * I didn't see no lights.

"Q. You saw the car and then it was just 'wham', just like that, is that correct? A. That's right.

"Q. Now the cars, as far as you know then, didn't move either way? A. As far as I know."

Fred Watkins, who was riding with plaintiff, also testified for plaintiff. He was rendered unconscious and had no recollection of the accident. Both Martin and Watkins testified that the windshield on plaintiff's car was clear and not frosted over.

Alice, Donald, and Taylor Penberthy testified that they arrived at the scene of the collision shortly after it occurred. They stated that the windshield on plaintiff's car was frosted over except for a small space in front of the driver's seat. Taylor Penberthy testified that this space was about a foot square.

It appears from photographs, which were introduced in evidence, that the major portion of the damage to plaintiff's car was to the left front, including the grille, bumper, hood, and left front fender. The right front fender does not appear to be damaged, thus indicating that the impact was more to the left front of plaintiff's car rather than squarely head on.

Neither defendant nor his brother testified in the case.

The negligence submitted by plaintiff's main instruction was failure on defendant's part to operate his automobile as near the righthand side of the highway as practicable under the circumstances.

Appellant contends that the court erred in overruling defendant's motion for a directed verdict, for the reason that plaintiff was guilty of contributory negligence as a matter of law. In support of this assignment it is asserted that the evidence shows conclusively that plaintiff, at the time of the collision, was driving partly on the south side of the highway and therefore failed to drive as close to the righthand side of the highway as practicable. Appellant contends that the record is barren of any evidence which placed plaintiff's car completely on the right side of the road, and asserts that the following facts and circumstances show that plaintiff was prior to and at the time of collision on the wrong side of the road: (1) that after the collision part of plaintiff's car extended

two feet over the center line; (2) that the vehicles hit head on and were found locked together; (3) that just prior to the collision plaintiff saw defendant's automobile directly in front of him; (4) that plaintiff did not swerve in either direction prior to the collision; and (5) that there was no movement sideways as a result of the collision, as shown by the fact that the collision was head on, and by the absence of skid marks or "push" marks.

■ It is conceded by appellant that the plaintiff testified on direct-examination that immediately prior to the accident the right side of his car was a foot and a half from the north edge of the pavement. But it is contended by appellant that on cross-examination plaintiff designated the point where he was so traveling at 90 feet or more from the scene of the accident, and for that reason there was no testimony that plaintiff was on the right side of the highway at the time of the collision. We have heretofore in this opinion set out this cross-examination. It appears therefrom that defendant's counsel was attempting to have plaintiff fix the exact point where he observed the right side of his car within a foot and a half of the north edge of the highway. He asked plaintiff where that point was with reference to the roads that ran north and south across the highway about 90 feet from the point of collision. Plaintiff was unable to fix the point with reference to these roads. He did say, however, that he thought he was beyond the center line of those roads and toward Elvins. But whether or not he was 90 feet or less from the point of collision when he observed his position with reference to the north side of the road, he was less than two seconds away from the impact. There is no suggestion in his testimony or anywhere in the record that he changed the course of his car after observing his position a foot and a half from the edge of the pavement. In our judgment, there was substantial evidence from which a jury could reasonably find

that plaintiff was on his proper side of the highway at the time of the collision.

It is true that the left front of plaintiff's car was south of the center line after the accident. According to the measurements made by Mr. Englehart, the left front wheel was six inches over the center line, and because the car rested at an angle with the road the left front fender and bumper extended several inches farther. The rest of the car was diagonally across the north lane. It is also true that there was testimony that the cars collided head on, and that plaintiff saw defendant's car directly in front of him just prior to the collision and that he did not swerve. However, it appears from the photographs that most of the force of the impact was to the left front of plaintiff's car, indicating that the cars did not meet squarely head on. Had they, in fact, met head on, it would not conclusively prove that the front end of plaintiff's car was not moved sideways by the force of the collision, as that would depend upon the weight of the cars and their speed. There is no evidence in the record as to defendant's speed or the relative weights of the cars. The absence of skid marks, in our judgment, does not conclusively show that plaintiff was driving on the wrong side of the road.

■ In our judgment, the foregoing facts and circumstances do not conclusively show that plaintiff was guilty of driving on the south side of the road. Clemons v. Becker, Mo.Sup., 283 S.W.2d 449.

Appellant's next point is that plaintiff was guilty of contributory negligence by failing to keep a vigilant lookout for approaching traffic.

■ The driver of an automobile is under a duty to exercise the highest degree of care for his own safety as well as for the safety of others. Failure of the operator of an automobile to see what could have been seen by observation in the exercise of the highest degree of care is

negligence per se. State ex rel. Kansas City Southern R. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Dempsey v. Horton, 337 Mo. 379, 84 S.W.2d 621; Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626; Wininger v. Bennett, Mo.App., 104 S.W.2d 413; Rohmann v. City of Richmond Heights, Mo.App., 135 S.W.2d 378; Jenicek v. Harrigan, Mo.App., 217 S.W.2d 764; Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935. Therefore, if a motorist fails to observe another, who is plainly visible, approaching him on the wrong side of the highway, he is guilty of a failure to exercise the degree of care which the law requires of him. And if his failure in this respect contributes to cause his injury, he will be denied a recovery of damages therefor. Negligence which will defeat recovery in such a case is predicated upon the existence of discoverable peril and the ability thereafter to avert the injury. Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10; Shaw v. Wilcox, Mo.App., 224 S.W. 58.

Appellant contends that under the facts in this case plaintiff was guilty of such negligence. It is urged that plaintiff either failed to look, or failed to see what looking would have revealed. In developing this point appellant asserts that his car was plainly visible from the time it rounded the sharp curve 100 feet west of the point of collision, but that plaintiff negligently failed to discover the peril of collision until immediately before the accident, when the two vehicles were so close to each other that nothing could be done to avert the accident.

■ It is impossible, on the record before us, to sustain appellant's contention. There is no evidence in the record as to the rate of speed of defendant's car at the time in question. It would be necessary for us to know this speed in order to determine whether plaintiff had sufficient time to avoid the collision after the danger of collision became apparent. It may have been that defendant's speed was such as to afford plaintiff an opportunity to swerve from the path of defendant's car, or to have warned defendant of the impending danger. On the other hand, if defendant was traveling—say, 75 or 80 miles per hour, there would have been insufficient time for plaintiff to have taken remedial steps, for the reason that the two vehicles would have collided upon the expiration of the reaction time. But we cannot speculate in reference to this matter. We cannot assess plaintiff's conduct as a matter of law without a fuller development of the facts. Appellant's assignment that plaintiff was guilty of contributory negligence as a matter of law is overruled.

Appellant contends that there was no substantial evidence of any negligence on the part of the defendant, and for that reason the court erred in refusing defendant's motion for a directed verdict, and in giving instruction number one. In support of these two assignments it is urged that there was no substantial evidence that defendant was on the wrong side of the road at and prior to the time of collision.

■ In disposing of appellant's first point we reviewed the evidence and pointed out that there was substantial evidence from which a jury could reasonably find that plaintiff was on his proper side of the highway at the time of collision. Plaintiff testified that immediately before the accident he saw defendant's car directly in front of him. From this evidence, and that previously reviewed, the jury could reasonably find that defendant was on the wrong side of the road at and prior to the collision.

Appellant's final assignment is that Instruction No. 1 was erroneous because it authorized a finding against defendant without limiting the jury to the negligence pleaded or proved, and without hypothesizing any facts.

The part of the instruction complained of is: "* * * if you further find that the defendant then and there failed to have his automobile as near the righthand side

of said highway as was practical under the circumstances, and permitted his automobile to be operated on the north half of said highway and that defendant was negligent in the operation of his automobile at said time and place * * *."

It is contended that the instruction not only authorized a recovery on the pleaded ground of failure to drive as near the righthand side of the highway as practicable, but gave the jury a roving commission to find for plaintiff upon any theory they might choose.

In our opinion, there is no merit to this contention. It is clear to us that the requirement of a finding of negligent operation was intended to refer to the operation of the automobile as theretofore hypothesized, and would be so understood by the jury.

Finding no error in the record, the judgment is affirmed.

RUDDY, J., and SAM C. BLAIR, Special Judge, concur.