Hazel THOMPSON, Plaintiff-Respondent,

v.

Alberta GRAY, Defendant-Appellant,

and

Harvey Huse, Defendant.

No. 8550.

Springfield Court of Appeals.

Missouri.

March 15, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied May 9, 1967.

Harold D. Jones, Bock & Jones, New Madrid, for defendant-appellant.

David E. Blanton, Blanton, Blanton & Rice, Sikeston, for plaintiff-respondent.

HOGAN, Judge.

The plaintiff, Hazel Thompson, was a passenger in an automobile driven by her sister, defendant Alberta Gray, when Mrs. Gray collided with a vehicle driven by defendant Harvey Huse. To recover damages for her resulting personal injuries, Mrs. Thompson instituted this action against both defendants. A jury has returned a verdict in favor of the plaintiff and against both defendants, and has assessed plaintiff's damages at the sum of $3,750.00. Only defendant Gray has appealed. The nature and extent of plaintiff's injuries are not in issue.

The casualty here involved occurred on January 31, 1965, on U. S. Highway 61, about 3.5 miles north of Sikeston in Scott County, Missouri. At the place of the accident, Highway 61 is a two-lane north and south highway 18 feet wide. The road is flat and level, though it curves slightly to the east as one travels south. On the west side of the highway, and north of the point of collision, there is a shoulder or berm nine feet wide. Just south of the point of collision, a gravel road intersects Highway 61 from the west, and northwest of this intersection there is a blacktop and gravel driveway and parking area which apparently serves two businesses, a tavern on the south and a restaurant and service station to the north of that. Neither the photograph presented here nor the oral evidence is definite enough for us to describe this driveway precisely; it appears to be a rectangular parking area and approach located adjacent to the highway on the west, just north of the intersecting gravel road. The accident happened about 4:30 P.M., and the pavement was dry and the visibility was good at that time.

The casualty occurred when defendant Huse, traveling north, turned left into the driveway across the southbound lane in which Mrs. Gray was driving. As we understand plaintiff's theory of recovery from the pleadings, evidence and her arguments here, it was that Mrs. Gray was negligent in turning her automobile to the right and into collision with the Huse car, when in the exercise of the highest degree of care and in the time and space available she could have avoided the accident by con-

tinuing to drive south in the west lane, and that this negligence combined and concurred with that of defendant Huse to cause the collision and produce the plaintiff's injuries. Plaintiff adduced evidence from three witnesses:

First was defendant Huse, 39 years old, who said he was in the "hearing aid business." Mr. Huse, just before the collision, was driving north on Highway 61, going "approximately 45 miles-an-hour, 45 to 50." Mr. Huse was on his way to the service station and cafe "there at Grant City," [1] which is on the "left side going north." The highway there is slightly upgrade, but level enough that "you can see." There is an intersecting gravel road there which comes in from the west, and the restaurant and filling station is north of the road. As Mr. Huse approached the intersection and his intended destination, there was "an Oldsmobile" (Mrs. Gray) approaching from the north in the west lane, a vehicle behind him to the south "half-a-mile or a mile," and a trailer truck in front of him, "somewhere between four and six car lengths" to the north in the east lane.

"Between half-a-quarter and a quarter-of-a-mile back" (south) of the point where he began to turn, Mr. Huse pulled the lever on his electric turn indicator, and it then "flashed on the dash." As Mr. Huse started to turn, the Gray car was between three and four hundred feet to the north, in the west lane. His speed was "cut in approximately half, maybe a little more." Asked to describe what Mrs. Gray did as he was making his turn, Mr. Huse said that at first she "didn't do anything until she got up close," and then "came off around the island there after me."[2] The two cars then came into collision "approximately ten feet off in the driveway off of the highway." After the impact, the Gray car was in the driveway. Prior to collision, Mr.

Huse had been headed northwest, and after the collision, he was headed southeast. "From the front door to the rear wheel" on the right side of Mr. Huse's car was damaged. Mr. Huse "[didn't] think" there were any cars in the southbound (west) lane south of the place of the accident when the collision occurred.

On cross-examination by defendant Gray's counsel, Mr. Huse reiterated a number of things to which he had testified on direct examination, and in addition estimated Mrs. Gray's speed at "between 50 and 70 * * * within the speed limit." Mr. Huse said he began his turn while he was still "about two car lengths" south of the intersecting road; that the truck ahead (north) of him was "between four and six car lengths" away; that at the time of impact, his vehicle was "on west of the shoulder"; that he meant west of the shoulder itself; and that at the time of impact the rear end of Mrs. Gray's car "might have been right at" the edge of the paved part of the highway, but "I don't know." Mr. Huse said he saw "glass and dirt and debris," and that it was "right at eight and nine feet" west of the west shoulder. This defendant also testified that when he crossed the center line he did so in a "northwesterly" direction and continued making his turn at that angle.

Mr. Huse was then interrogated by his own counsel, and testified, among other things, that the highway had shoulders on either side; that there was a little island (referring to an exhibit not before us) in front of the filling station; that there was a driveway on either side of the island; that the distance between entrances to the driveways was "over 300 feet, over a hundred yards"; and that when he began his turn Mrs. Gray was "just to the north of it [the north driveway]" when he made his turn.

---

1. Apparently a name for the group of businesses located in the parking area west of the highway.

2. This "island" appears in the testimony at several places; it is described as being 36 yards long, with a driveway at either end. Apparently it lies in front of the cafe and filling station.

The second witness called by plaintiff was Mrs. Lula Doolin, operator of the station and restaurant. Mrs. Doolin's attention had been attracted by the "lick of the wreck," though she did not see the cars collide. When Mrs. Doolin looked from inside the restaurant, she saw two ladies who had been thrown out of the car on the pavement, and Mr. Huse's car was "off, off the pavement." Mrs. Doolin saw glass and debris west of the pavement, "I judge ten or twelve feet." "As far as I could see," Mrs. Doolin said, the Gray vehicle, after impact, was "mostly off this way" (meaning west) when she saw it.

Plaintiff also testified. Some of her testimony deals with the injuries she sustained, and we shall not narrate that part of her evidence. As material here, Mrs. Thompson testified that on the occasion in question she was riding with her sister and her niece, a Mrs. Janet Sims. Mrs. Thompson does not drive. As she approached the place of the accident, plaintiff noticed no traffic ahead, going south. Plaintiff noticed Mr. Huse before he began his turn, but didn't know "how far back." Plaintiff was asked what Mrs. Gray did when Mr. Huse started his turn, and she answered, "Well, when he pulled across in front of her, she later applied her brakes and pulled to the right." According to Mrs. Thompson, the collision occurred "a little west" of the paved part of the highway. Asked to estimate the speed of the Gray vehicle prior to collision, plaintiff stated, "I would say 60 miles-an-hour."

On cross-examination by defendant Gray's counsel, Mrs. Thompson testified that the accident occurred about 4:30 P.M. She was asked several questions about the point of collision, which she answered by saying "I am not sure," or equivalent words, and was asked if it "wasn't a fact" that defendant Gray's car was "less than five car lengths away" when Mr. Huse began his turn. Plaintiff responded in this fashion: "I said five car distances; I said I didn't know." Mrs. Thompson then answered affirmatively when she was asked if her testimony as to speeds and distances represented "estimates," or "best judgment"; she was again interrogated about the position of the Gray car when the collision occurred, and answered, "All I remembered that she applied her brakes and pulled to the right."

On cross-examination by counsel for defendant Huse, the plaintiff testified that she noticed the Huse automobile before it started "across the line," inasmuch as she saw his "signal lights on," and at that time he was south of the tavern. All plaintiff could say in locating the Gray automobile at the time Mr. Huse started to turn was to say "we was along there in front of the station," but Mrs. Thompson here described the locus of impact relative to the pavement by saying, "I wouldn't say he was off the highway when she pulled to the right, but he was off the highway when we hit." Aside from medical testimony, which we have not narrated, this was substantially plaintiff's case.

Defendant Gray presented her case through the testimony of four witnesses. First, she called a member of the State Highway Patrol, Trooper Dennis Lewis, who had investigated the accident. Trooper Lewis testified that when he arrived he found a 1961 Oldsmobile in the service station drive pointing southeasterly, and a 1956 Oldsmobile partly on the shoulder and partly in the west lane of the highway, heading south. He found tire marks in the west lane, and dirt and glass on the shoulder of the road and in the service station drive. The debris covered an area about 40 feet wide, beginning at a point about three feet west of the west edge of the pavement. Trooper Lewis measured the shoulder on the west and the west or southbound lane of Highway 61, and each was nine feet wide. On a rather small picture, Trooper Lewis marked the location of the debris, but he was not permitted to give his opinion as to the point of impact. This exhibit, i. e., the photograph as marked, indicates the debris was located at the west edge of the shoulder and in the parking

area we have mentioned. Trooper Lewis also testified that he found 40 feet of skidmarks which ran southwest, partially on the pavement and partially on the shoulder, and that the skidmarks ended about "three car lengths approximately" from the debris. On cross-examination by counsel for defendant Huse, Trooper Lewis said the debris was "scattered over the driveway"; that it started about three and a half feet from the edge of the pavement and "scattered back." Trooper Lewis had obtained his distances by "[us]ing a step."

Defendant Gray testified that just prior to the accident she "was doing about 55." When she saw Mr. Huse, she applied her brakes and they responded. Mrs. Gray "gripped the steering wheel, and the car might have pulled a little bit to the right." At the time of impact, the rear part of her car was still on the pavement, Mrs. Gray said, and she thought "part of the front of it was still on it." At the time of impact, according to Mrs. Gray, the back part of Mr. Huse's car was still "on the highway." When she saw the Huse automobile turning, Mrs. Gray "would say" there was more traffic behind it. The defendant also testified that she was rendered unconscious when she was thrown from the car after the collision.

On cross-examination by counsel for defendant Huse, Mrs. Gray estimated the length of a car to be 18 or 20 feet; consequently, her estimate was that Mr. Huse was between 72 and 80 feet ahead of her when he started to turn. She meant by this that Mr. Huse was about four car lengths away when she applied her brakes. The application of defendant Gray's brakes "could have" pulled her car to the right, but she didn't say that she intentionally turned her automobile to the right. It was brought out that in a pre-trial deposition defendant had answered affirmatively when asked if she did turn to the right, but Mrs. Gray did not remember giving that answer on trial.

On cross-examination by counsel for plaintiff, Mrs. Gray stated that she "[couldn't] tell * * * by feet" where the impact occurred with reference to the intersecting gravel road, but that the accident happened "along there by the station." Asked to fix the point where Mr. Huse started his turn with reference to the intersecting road, Mrs. Gray answered "somewhere along there by that graveled road."

Mrs. Janet Sims, Mrs. Gray's daughter, stated on direct examination that she would estimate her mother's speed, as they approached the place of the accident, at "from 55 to 60 miles per hour." Mrs. Sims said that the Huse automobile was "from three to four car lengths" away when it started to turn; that Mrs. Gray then applied the brakes and the car then "pulled to the right." Mrs. Sims said that part of the Gray car was off the road but she couldn't say how much was off the road when the collision occurred, and that the Huse automobile was still partially on the highway at the time.

On cross-examination by counsel for defendant Huse, Mrs. Sims said she had first seen the Huse car when it pulled across the center line. On cross-examination by counsel for plaintiff, Mrs. Sims stated that when Mr. Huse started across the road he was about even with the south edge of the intersecting gravel road. There was some interrogation at this point about a written statement Mrs. Sims had made several months before the trial in which she had stated her mother swerved to the right at about the same time she applied her brakes. Mrs. Sims said that she had believed the statement was true and correct at the time she gave it, but that her recollection was fragmentary because "it all happened so quickly."

Defendant's final witness was W. A. Williams, Jr., a student at the State College at Cape Girardeau, Missouri. Mr. Williams had been traveling north behind Mr. Huse; he was about 200 feet from the point of accident when the collision occurred. Mr.

Williams testified that the back end of the Huse car was still on the road and the front was off in the drive when the collision occurred, and he estimated that the two vehicles were about 60 feet apart when Mr. Huse started his turn. Mr. Williams, on cross-examination, testified that Mr. Huse's turn wasn't "real gradual, but it wasn't a sharp turn, either." Mr. Huse had "angled across the road." About three and a half or four feet of Mr. Huse's car remained on the pavement at the time of impact.

The defendant also read in evidence parts of a deposition given by the plaintiff before trial in which she had said that the Huse vehicle was not as much as five car lengths from the Gray car when Mr. Huse began his turn, and had said that Mrs. Gray "didn't have time to slow, and when she applied her brakes and pulled to the right * * * that was when we hit."

Having been presented with this welter of confusing and contradictory testimony, the jury was given the following verdict-directing instruction concerning defendant Gray:

"INSTRUCTION NO. 2

Your verdict must be for the plaintiff and against defendant Alberta Gray, if you believe:

First, defendant Alberta Gray allowed all or a portion of the car she was driving to leave the south bound traffic lane of Highway U. S. 61, and,

Second, defendant Alberta Gray was thereby negligent, and,

Third, such negligence directly combined with the acts of defendant Harvey Huse to cause injury to the plaintiff."

No other instruction specifically referable to defendant Gray's liability was offered or given. After it had retired, the jury was returned to the courtroom and the following exchange of remarks occurred:

"THE SHERIFF: They want to ask a question.

THE COURT: Did you have some question you desire to ask?

A JUROR: Yes, sir, on Instruction No. 2, 'Your verdict must be for the plaintiff and against the defendant Alberta Gray if you believe defendant Alberta Gray allowed all or a portion of the car she was driving to leave the southbound traffic lane of Highway U. S. 61.' Now, is that the law?

THE COURT: Well, the law is contained in all the instructions. The instructions must of course all be taken together. Each of them state a proposition of law, including that instruction, so that all the instructions are to be considered together and that one as it reads.

A JUROR: That was the only question we had. Thank you.

THE COURT: All right."

The appellant has attacked this submission in her first two assignments of error. Her points are made in verbose and rather obscure fashion, but the sense of her complaint is that Instruction No. 2 constitutes prejudicially erroneous misdirection and that there is no evidentiary basis for submission of the one hypothesized act as an act of causal negligence. The appellant has cast her brief and argument in terms of the submissibility of plaintiff's case; she maintains that her after-trial motion for judgment (Section 510.290, R.S.Mo. (1959), V.A.M.S.; Rule 72.02, V.A.M.R.) should have been sustained, and expansively states that the only question we should consider is whether the trial court erred in denying that motion. The respondent does not discuss Instruction No. 2; she contents herself with saying that her trial theory was that Mrs. Gray's negligence consisted of allowing her vehicle to leave the traveled part of the highway and collide with Huse west of the pavement, when in the exercise of the highest degree of care she could have avoided the collision by remaining in her own lane. That was not what was submitted; plaintiff's brief contains a much

more complete statement of her theory than her verdict-directing instruction.

■ We think the appellant, in maintaining in the trial court that her after-trial motion for judgment in accordance with her motion for directed verdict should have been sustained, and in carrying that line of argument forward here, has misconceived the nature of the error for which she seeks redress. If a plaintiff, having pleaded several grounds or assignments of negligence, elects to submit only one, for which there is no evidentiary support, there is error because the plaintiff made no submissible case.[3] On the other hand, if the plaintiff makes a case on the sole submitted ground, but submits it on a wholly insufficient hypothesis, then the error lies in the misdirection of the jury.[4] The two situations are not always readily distinguishable, however,[5] and in any event, we consider appellant's points to be meritorious. We are of the opinion they should be considered. Compare Miller v. Fink, Mo.App., 387 S.W.2d 173, 176 [1]; and see Rule 79.04, V.A.M.R.

■ In our view, both of appellant's complaints regarding Instruction No. 2 are valid, and both involve substantial error. In the first place, the instruction in context amounted to prejudicial misdirection. We realize that under the present practice, instructions need not be as specifically detailed as they formerly were, and should submit only the ultimate factual issues. Rule 70.01(a), V.A.M.R.; Price v. Seidler, Mo., 408 S.W.2d 815, 824 [17]. This applies to modified M.A.I. submissions, which Instruction No. 2 purports to be. Rule 70.01 (e), V.A.M.R. This instruction is not one required to be used, however, and a verdict-directing instruction must still submit those facts which must be proved to authorize recovery, when they are in issue.[6] In the case at hand, Mrs. Gray's rights and duties were, in our view, the same in substance as those of a driver who sees another vehicle advancing toward him on the wrong side of the road. She could not insist upon the right of way; she had the duty to take all reasonable precautions consistent with her own safety to avoid collision with Mr. Huse, but her duty to act did not arise until she knew or by the exercise of the highest degree of care should have known that a collision would likely occur if she did not do so.[7] In addition to this actual or constructive knowledge of the likelihood of a collision, or condition of "discoverable peril," as it is sometimes called, the plaintiff was required to show that thereafter defendant Gray had

3. Page v. Hamilton, Mo., 329 S.W.2d 758, 762 [5]; Haire v. Stagner, Mo.App., 356 S.W.2d 305, 308 [2, 3]; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 785–786 [3, 4] [5, 6].

4. Evans v. Landolt, Mo., 389 S.W.2d 15, 18–19 [3]; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 368, 251 S.W.2d 59, 64 [7]; see White v. Kansas City Public Service Co., 239 Mo.App. 571, 577–578, 193 S.W.2d 60, 63.

5. Compare Girratono v. Kansas City Public Service Co., Mo.App., 243 S.W.2d 539, 544–545 [10] [11] [15], with Girratono v. Kansas City Public Service Co., supra, 363 Mo. at 368, 251 S.W.2d at 64 [7].

6. " * * * The jury is impaneled to decide disputed issues of fact. The failure to instruct on every issue has been error, and continues to be error. * * * A lawyer needs to know what facts must be proved to authorize a recovery, and then make sure that the verdict directing instruction hypothesizes each such element." M.A.I. XXXI; see also Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622, 630 [8, 9].

7. Nolte v. Childress, Mo., 387 S.W.2d 569, 573 [1–4]; Probst v. Seyer, Mo., 353 S.W.2d 798, 804 [7, 8], 91 A.L.R.2d 1252, 1259; Brooks v. Stewart, Mo., 335 S.W.2d 104, 111, 81 A.L.R.2d 508; Nelms v. Bright, Mo., 299 S.W.2d 483, 489–490 [14–16].

the ability to avert the injury,[8] and having the ability to avoid a collision means not only the mechanical appliances, but sufficient time and distance to take effective action as well. Zalle v. Underwood, Mo., 372 S.W.2d 98, 102 [2]. In the circumstances before us, the plaintiff's hypothesis, assuming her theory to be as she now states, would not have required Mrs. Gray to take any precaution which was inconsistent with her own safety; the precautionary act hypothesized was that she remain in her own lane of traffic. But the other elements of the plaintiff's case should have been hypothesized. What lay at the very heart of this controversy was whether Mrs. Gray had enough time and space to avoid the collision by taking reasonable precautions. Instruction No. 2 did not require a finding that she did, though that was an essential element of plaintiff's case. And since the jury was not advised when Mrs. Gray's duty to take precautionary measures began, it had no criterion or guide by which to measure the time and space available. In these two substantial respects, Instruction No. 2 was erroneous. Cf. Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., supra, 407 S.W.2d at 629 [7]. At the same time, we do not say that a long, detailed hypothesis was necessary; the missing elements could have been supplied in a single sentence.

The appellant further contends that Instruction No. 2 does not hypothesize an act of causal negligence, though again her argument of this point is diffuse and obscure. We are inclined to agree with her that there is no evidentiary support for a finding that remaining in the west or southbound lane alone would have avoided the accident. The evidence most favorable to plaintiff does tend to show that whatever the distance which separated Mrs. Gray and Mr. Huse when Mr. Huse began to turn, and whatever their closing speeds, Mr. Huse was well off the road by the time Mrs. Gray reached the point of collision. The record does not support the conclusion that Mr. Huse would have reached that point off the road if Mrs. Gray had not drastically slackened her speed. To this extent, bearing in mind that the test of causal connection is whether, absent the negligent act, the injury or damage would not have been sustained, Wood v. St. Louis Public Service Co., 362 Mo. 1103, 1109, 246 S.W.2d 807, 811 [4]; LaPlant v. E. I. DuPont De Nemours and Company, Mo. App., 346 S.W.2d 231, 244 [24], the single omission hypothesized is not a submission of causal negligence, because merely staying in the same lane would not have avoided the injury or damage.

The appellant has made a number of other points directed to the submissibility of the plaintiff's case, most of which emphasize her position that there was not time to avoid the accident after Mr. Huse began his turn. We have considered these further arguments, but we do not find the matters appellant raises to be determinative, nor do we find it necessary to recount the evidence and demonstrate the possible reasonable inferences to be drawn from it in detail. If Mrs. Gray was confronted with an emergency, that fact would not excuse her as a matter of law. Jones v. Hughey, Mo., 283 S.W.2d 550, 552 [1]; Rohde v. St. Louis Public Service Co., Mo., 249 S.W.2d 417, 420 [1]. We do not consider Mr. Huse's estimates of time, distance and position on the road to be so unbelievable that they do not constitute substantial evidence, Wood v. Ezell, Mo.App., 342 S.W.2d 503, 506–507 [4, 5], and the location of the debris, scattered as it was over an area of about 40 feet, was not conclusive proof of the point of impact, nor the manner in which the accident occurred. Williams v. Cavender, Mo., 378 S.W.2d 537, 543 [6]; Hamre v. Conger, 357 Mo.

---

8. Becker v. Clemons, Mo.App., 295 S.W. 2d 203, 208 [5]; Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10, 15 [5]; Shaw v. Wilcox, Mo.App., 224 S.W. 58, 59 [4].

497, 506–507, 209 S.W.2d 242, 248–249 [9]; Hayward v. Richardson Construction Co., 136 Mont. 241, 347 P.2d 475, 478 [3], 77 A.L.R.2d 1144, 1149. We think the appellant's point that there is no evidence of intentional swerving to the right is strained and without substantial merit. Mrs. Thompson, being asked on direct examination what her sister did when Huse turned, answered: "Well, when he pulled across in front of her, she later applied her brakes and *pulled to the right.*" (Our emphasis.) On cross-examination by counsel for defendant Gray, being asked if she was uncertain whether the rear end of the Gray car was off the pavement when the accident occurred, plaintiff answered: "All I remembered that she applied her brakes *and pulled to the right.*" (Our emphasis.) Asked on cross-examination by counsel for defendant Huse if Mr. Huse had crossed the highway when Mrs. Gray "pulled to the right," Mrs. Thompson answered "yes," and then qualified her answer by saying, "I wouldn't say he was off the highway *when she pulled to the right,* but he was off the highway when we hit." (Our emphasis.) We note that during the course of Mrs. Sims' interrogation about a written statement she had made, counsel interjected, "Your Honor, I don't think there is any conflict in swerving to the right other than what this lady has testified to." If the repeated statement that defendant Gray "pulled to the right" is not exactly the same as saying Mrs. Gray turned right, we regard it as the equivalent.

In our view, we have been presented with reversible error, defectively preserved, and the cause should be retried on proper instruction. At the same time, we consider that the errors presented may have been and were likely induced by general unfamiliarity with the new instruction. practice, and that upon the principles we believe to be applicable the plaintiff has a submissible case. The appropriate action is reversal of the judgment and remand for a new trial. Evans v. Landolt, supra, 389 S.W.2d at 18–19 [3]. It is so ordered.

STONE, P. J., and TITUS, J., concur.

## On Motion for Rehearing

PER CURIAM:

The appellant has filed an alternative motion for rehearing or for transfer to the Supreme Court, in which she first vigorously argues that we have overlooked one of the points she advanced upon her original argument in this case, and further maintains that the cause should be remanded for retrial upon the issue of liability only. Her first point is simply a reargument of issues decided in the original opinion and, under the provisions of Rule 83.16, V.A.M.R., must be disregarded. Ackerman v. Globe-Democrat Publishing Co., Mo., 368 S.W.2d 469, 481 [13]. In contending for a limited remand, the appellant says that if the case is to be reversed she is entitled to a remand on the issue of liability only as a matter of law, since the question of damages was not raised on appeal by either party. Without holding that the appellant is entitled to have the remand limited to the issue or issues of liability as a matter of law simply because she made no point of error relating to the assessment of damages upon the appeal, Artstein v. Pallo, Mo., 388 S.W.2d 877, 882 [6], the court has concluded that in this instance a new trial limited to the issue or issues of liability can be had without prejudice or injustice to the plaintiff. Therefore, upon the motion for rehearing, the opinion is modified and it is ordered that the cause be reversed and remanded for a new trial upon the issue of liability only, and the motion for rehearing is denied; the alternative motion for transfer to the Supreme Court is also denied.

All concur.