## CUMBERLAND TELEPHONE AND TELEGRAPH COMPANY *v.* TAYLOR.

[No. 6,780.   Filed June 2, 1909.]

1. CONVERSION.—*Demand.*—*What Constitutes.*—The demand which *prima facie* (with the refusal) evidences conversion should be a plain unequivocal request for the present delivery of the property; and a demand requiring the person upon whom it is made to transport or carry the property to the demandant, is insufficient. p. 33.

2. CONVERSION.—*Demand.—Refusal.*—Upon the making of a demand for property, the refusal, to evidence a conversion, should amount to a denial of the claimant's right to the possession. p. 33.

3. CONVERSION.—*Demand.—Evidence.*—Evidence that plaintiff told the defendant to bring plaintiff's horse home, and that defendant said he would not do so, does not show a conversion of the horse. p. 33.

4. CONVERSION.—*Refusal to Deliver Property.*—The mere refusal to deliver demanded property constitutes evidence of a prior, but not a present, conversion. p. 34.

5. TRIAL. — *Recovery.* — *Damages.* — *Complaint.* — *Paragraphs.* — Where the verdict could have been rendered on any of the three paragraphs of the complaint, the evidence and the amount of damages being applicable to all, the court on appeal cannot say that the judgment was based wholly upon the first paragraph. p. 34.

6. CONVERSION.— *Damages.*— *Bailment.*— *Complaint.*— One paragraph of a complaint alleging that defendant converted plaintiff's horse to defendant's use, to plaintiff's damage, another that plaintiff hired his horse to defendant who so negligently used it as to render it worthless, to plaintiff's damage, and another, that defendant hired plaintiff's horse, crippled it and placed it in a livery stable so that the livery man's lien was greater than the value of the horse, to plaintiff's damage, are all sufficient. p. 34.

7. BAILMENT.— *Contracts.*— *Implied.*— *Delivery.*— *Livery Stable Keepers.*—A person hiring a horse from a livery stable keeper, without any express agreement as to the place of redelivering the horse, impliedly agrees to redeliver at the stable where the horse was procured. p. 34.

8. BAILMENT.—*Horses.—Negligent Injuries.*—A bailee who knowingly works a lame hired horse is liable for the resulting injuries. p. 34.

9. TRIAL.— *Instructions.*— *Conversion.*— *Bailment.*—An instruction that if the defendant hired the plaintiff's horse for an uncertain time, and refused to redeliver such horse upon demand, and that plaintiff was thereby deprived of said horse, such facts would be evidence of a conversion, is correct. p. 34.

From Floyd Circuit Court; *William C. Utz*, Judge.

Action by Charles Taylor against the Cumberland Telephone and Telegraph Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*C. L. & H. E. Jewett* and *William L. Granbery*, for appellant.

*Stotsenburg & Weathers*, for appellee,

COMSTOCK, J.—Appellee sued the appellant to recover damages for the alleged conversion of a horse and for injuries alleged to have been received by said horse while in possession of said company under a contract of hiring. The amended complaint was in three paragraphs, the substance of each being as follows: The first paragraph alleges that on August 8, 1906, Taylor was the owner, and entitled to immediate possession, of a horse worth $175; that on said day the defendant, being in the possession of the horse, converted and disposed of the same to its own use, to Taylor's damage in the sum of $175.

The second paragraph alleges that on August 8, Taylor was the owner of a horse worth $175; that the telephone company, on said day, hired the horse from Taylor to be used in its business at Lanesville, Indiana, and agreed to pay seventy-five cents per day hire; that the telephone company so immoderately, improperly, negligently and carelessly used such horse, and neglected to care for the same, that on August 20, it was injured and rendered worthless, to Taylor's damage in the sum of $175.

The third paragraph contains the same allegations as the second with reference to the ownership, value and hiring of the horse, the compensation to be paid per day, and the manner in which the horse became sick, and in addition alleges that the telephone company placed the horse in the keeping of Albert Day, a liveryman, and permitted it to remain there, and, upon demand, refused to pay the claim of said Day; that the horse is now of the value of only $25, and the liveryman's bill amounts to $50, whereby the horse is lost to Taylor.

The defendant answered the amended complaint by general denial, and by special plea of settlement and payment, which was denied by plaintiff. The case was tried by jury and judgment for $175 rendered in favor of plaintiff. Defendant's motion for a new trial was overruled. This action of the court is relied upon for reversal.

The grounds for a new trial upon which appellant relies are: The sufficiency of the evidence to sustain the verdict; the refusal of the court to give appellant's instruction two; the giving of appellee's instructions seven and ten. Said second instruction was a peremptory one to return a verdict in favor of defendant upon the first paragraph of complaint.

Instructions seven and ten read as follows: ''(7) If the defendant hired of the plaintiff the horse described in the complaint, and under the contract mentioned in the complaint, it would be the duty of the defendant when through with said horse to return it to the plaintiff at the stable of the plaintiff in Georgetown, Indiana, unless it was agreed between the parties that said horse was to be surrendered at some other place.'' ''(10) If the defendant obtained the possession of the horse described in the complaint under the contract of hiring therein described, and such contract was for no certain time, and the defendant refused and neglected to redeliver said horse to the plaintiff on demand, and the plaintiff thereby was deprived of said horse, then such facts would be evidence that the defendant converted such horse to its own use.''

The questions thus raised make it proper to set out a summary of the evidence. On August 6, 1906, the appellee owned the horse in question, which was three and one-half years old, sound in every particular, and worth from $175 to $200. On said date the appellant, through its foreman, Carl Darbo, at Georgetown, Indiana, where appellee lived and where his horse was kept, hired it from the appellee for use in appellant's business. On Monday, August 6, 1906, the horse was sound and uninjured, and on that day was used in the work along the line, and at night he was driven to Lanesville, where board was engaged for the men at the hotel of Albert Day. In connection with the hotel Day ran a livery barn and feed stable, and the horse was put in his barn, where it was fed and cared for by Day at appellant's expense. On Tuesday morning the horse was lame. Darbo

said the horse had strained himself, and made no examination, but worked it all that day. On Tuesday night the horse was still lame, and on Wednesday morning he was worse. Tuesday night or Wednesday morning Darbo telephoned to the appellee that the horse was lame, and the appellee instructed Darbo not to work the horse if he was lame. Wednesday morning, Keithley told Darbo that the horse ought not to be worked. Darbo replied that it did not amount to anything, for the men to load up. The horse was worked all day Wednesday, and at night he was worse. On Thursday morning the horse was still lame, but Darbo ordered the men and tools to be hauled over a rocky road five miles to Georgetown. While at Georgetown the appellee saw the horse, and saw that he was lame. He told Darbo again, not to work the horse if he was lame. In the afternoon Darbo drove the horse back to Lanesville. On Thursday night the horse's leg was very much swollen. Keithley then called up the appellee and told him the condition of the horse, and appellee told him not to work the horse the next day. Keithley reported to Darbo that the appellee did not want the horse worked any more. On Friday and Saturday Darbo ordered the horse to be worked, and he was worked up to Saturday night. On Wednesday Keithley examined the horse's leg and found a hole in the right hind leg at the hock joint. It appeared as if it had been pierced with a wire. On Wednesday one Minton, also an employe of the appellant, under Darbo's direction, drove the horse to Georgetown for a load of wire. The horse became worse during the week, and the appellant did nothing to treat him. The horse limped all the time. On Saturday night Darbo called Taylor up and told him he had better bring a veterinary surgeon over to Lanesville to see the horse. Early the next week appellee took Doctor Tucker, a veterinary surgeon, over to Lanesville, as Darbo had requested. He examined the horse, and found an enlargement of the hock joint. There was a puncture on the inside of the joint,

about the size of a telephone wire.   The puncture was an
inch and a quaurter deep and the leg was much swollen,
being six to eight inches across.   He treated the horse in
Day's stable for three weeks, making in all eight visits.
The wound was such that the least bit of use would
make it worse.   A week before the trial Doctor Tucker
saw the horse.   The leg was still swollen, the leader was
drawn, and the horse limped.   In his opinion the horse was
nothing but "a plug," and not worth $25.   When appellee
took Tucker over to Lanesville, at Darbo's request, appellee
remained two weeks and looked after the horse, at the end
of which time Darbo told the appellee to go home, that he
would look after the horse.   At that time the horse could
not travel.   In September Darbo was in Georgetown, and
the appellee asked him to bring the horse home, and Darbo
refused.   The horse was put in charge of Day on August
6, 1906, and the company paid Day's feed bill for three or
four weeks thereafter.   The appellant refused to make any
settlement for the horse, but it did agree to pay Day's feed
bill up to the Friday following, being November 18, 1906.
In addition to the feed bill, Day had a claim for $30 for
caring for the horse while injured, which the appellant re-
fused to pay, and Day refused to give up the horse until his
lien was paid.   The care that Day had given the horse was
furnished at the request of the appellant.   At the time Day
and the appellee visited Reid, the manager of the company,
Reid told Day that his company would not be responsible
for the horse any longer, but he did not offer to deliver him
to the appellee, neither did he discharge Day's full lien by
paying the bill of $30, and he made no effort to get the
horse back to Georgetown, but suffered it still to remain in'
Day's hands, with the lien against it.   Day still has the
horse, and his lien for the care of it prior to November 18,
1906, exceeds its value.

In behalf of appellant it is argued that no demand for the

possession of the property was made, and, as a demand was necessary, said second instruction should have been given, and that, as the amount of damages assessed was the value of the property (that being the amount which one is entitled to recover for conversion), it is apparent the jury found for appellee upon the first paragraph of the complaint.

No particular form of words is prescribed in which a demand should be expressed. But the demand which *prima facie* (with the refusal) constitutes conversion should

1. be a plain unequivocal request for the present delivery of the property. *Monnot* v. *Ibert* (1859), 33 Barb. 24. A demand which requires that the person upon whom it is made transport or carry the chattel to the demandant is insufficient. *Phelps* v. *Gilchrist* (1854), 28 N. H. 266; *Durgin* v. *Gage* (1860), 40 N. H. 302. See, also, *Farrar* v. *Rollins* (1864), 37 Vt. 295; *Direct Navigation Co.* v. *Davidson* (1903), 32 Tex. Civ. App. 492, 74 S. W. 790.

The refusal, in order to constitute a conversion, should amount to a denial of the claimant's right to the possession. *Farrar* v. *Rollins, supra; Direct Navigation*

2. *Co.* v. *Davidson, supra;* 28 Am. and Eng. Ency. Law (2d ed.), 708, and cases cited in note.

Appellee testified to a conversation had with Darbo after he had himself cared for the horse while it was being boarded at the expense of appellant at Day's stable and while

3. the horse was still there, as follows: "Q. After you went home did you see Mr. Darbo again? A. Yes. Q. When was that? A. I saw him several different times. Q. Did you see him in the month of September? A. Yes. Q. Did you make any demand on him for the horse? A. Yes, sir. Q. What did you say to him? A. I told him I wanted him to bring the horse home. Q. What did he say? A. He said he was not going to."

The foregoing is the only evidence upon the question of demand. It was not a sufficient demand, and there was no

denial of appellant's right to the possession of the property. The refusal to redeliver property of itself is not a conversion, but only evidence of a prior conversion. The conclusion that the verdict was upon the first paragraph does not necessarily follow, for there was evidence to establish the allegations of the second and third paragraphs, including the amount of damages sustained and awarded. Each paragraph was sufficient.

As to said seventh instruction, it appears that in the contract of hiring no place was fixed where said horse was to be redelivered to the appellee. There was therefore an implied agreement to redeliver it to appellee at Georgetown. *Esmay* v. *Fanning* (1850), 9 Barb. 176; Story, Bailments (9th ed.), §117; Edwards, Bailments, 333; 2 Kent's Comm., *508; *Higgins* v. *Emmons* (1823), 5 Conn. 76, 13 Am. Dec. 41; *Mason* v. *Briggs* (1820), 16 Mass. 453.

After the lame condition of the horse was known to appellant, and appellee requested that it be not worked while that condition remained, appellant continued to work him, aggravating and increasing the hurt, resulting in his permanent injury. This would make appellant liable, although the evidence does not show that appellant was at fault or mistreated the animal up to the time that his injury was known. This fact would render appellant liable under the second and third paragraphs of the complaint without a demand.

Said tenth instruction was a correct statement of the law.

Whatever the facts of the controversy may have been, the verdict is supported by evidence, and we are not warranted in reversing the judgment.

Judgment affirmed.