WICHITA POULTRY COMPANY, Respondent, v. SOUTHERN PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 5, 1917.

1. CARRIER: Consignor: Owner: Diversion: Conversion. If the carrier knows the shipper consignor is the owner of goods shipped, he is bound to obey the order of such consignor diverting the shipment to some other consignee than the one named in the bill of lading; and if he fails to obey such order he is guilty of conversion.

2. ———: Consignor: Owner: Delay: Damage: Liability. A consignor of a carload of chickens was the owner of them and known to be such by the carrier. He ordered the carrier to divert the car to another place on its line and deliver to a different consignee from the one named in the bill of lading. The carrier did so, but the last consignee refused to accept the car. The original consignee, having authority from plaintiff, but which was unknown to the carrier, then ordered the carrier to deliver to him as originally directed in the bill of lading and the carrier refused. The consignor then ordered him to do so and he obeyed. Held, that defendant was not liable for damage caused by the delay.

3. ———: ———: Agreed Statement of Facts. An agreed statement of facts is likened to a special verdict and it must contain every essential element, without doubt or ambiguity, to sustain the judgment.

Appeal from Jackson Circuit Court.—Hon. Kimbrough Stone, Judge.

REVERSED AND REMANDED (with directions.)

Watson Gage & Watson for appellant.

H. R. Lebrecht and A. J. Bolinger for respondent.

ELLISON, P. J.—Plaintiff shipped a carload of chickens from Wichita, Kansas, to San Francisco, California consigned to its agents Stewart & Stevens, a commission firm in the latter city. There was delay in delivery and this action was instituted to recover damages. Plaintiff prevailed in the trial court.

The case was tried by the court on an agreed statement of facts, by which it appeared that the Chicago, Rock Island & Pacific Railway Company was the initial carrier and defendant the destination, or terminal carrier. That while the chickens were on the way Stewart & Stevens sold them to Fred Deal at Oakland, California, and notified plaintiff, who immediately gave an order, by telegraph, to divert the shipment to Deal at Oakland and this order was complied with by defendant. But thirty-five hours before the car arrived at Oakland, Deal had notified Stewart & Stevens that he would not accept the chickens and they then asked defendant's division freight agent at San Francisco to continue the shipment to them at San Francisco as originally billed. They had authority from plaintiff to divert shipments, *but defendant had no notice of such authority,* or that they were even plaintiff's agents further than that they were merely consignees. This agent said he would do it, and handed the request to defendant's agent in the operating department, who informed him that it could not be complied with. No notice of this refusal was given to Stewart & Stevens and the car was duly set out at Oakland, and Deal notified next morning. He still refused to take it and defendant's agent at Oakland immediately, by telegraph, asked for orders from the initial carrier at Wichita, and, in response, was directed to comply with Stewart & Stevens' request to continue the shipment to them at San Francisco, the original destination, and this was done. It was agreed that the damages caused by this delay was $500, and that if the finding was for plaintiff, it should be in that sum.

While the law is that the consignee may be regarded by the carrier as the owner (nothing appearing to the contrary) (Smith v. Railroad, 145 Mo. App. 394, 406; South-

ern Exp. Co. v. Dixon, 94 U. S. 549; 1 Hutchinson on
Carriers, sec. 177) ; yet where the carrier knows the ship-
per to be the owner (as in this case) he is bound to recog-
nize the right of such owner to give orders diverting the
shipment, while *en route,* to any other person than the
one named as consignee in the bill of lading. [2 Hutchin-
son on Carriers, sec. 660.] And if he should deliver to
the consignee, or to the latter's order, after receipt of an
order from the owner consignor diverting the shipment
to some other person, he would be liable to the consignor
in conversion.

The facts agreed upon show that plaintiff was the
owner and that he was recognized as such by both de-
fendant and Stewart & Stevens. In considering the ques-
tion of defendant's liability we must just of its action
from the standpoint of its knowledge; for though it knew
plaintiff to be the owner, the latter had not notified it
that Stewart & Stevens had authority to divert the ship-
ment, or were its agents. Therefore when defendant ac-
cepted and obeyed plaintiff's order diverting the ship-
ment from Stewart & Stevens at San Francisco to Deal
at Oakland, it was acting strictly within its legal obliga-
tion and duty. And when, through its agent, it accepted
an order from Stewart & Stevens who were without
right to give such order, it had a right, subsequently, to
ignore it. For, judged by the facts which were within
its knowledge, compliance would have been conversion.

When defendant's division freight agent informed
the agent in the operating department of the request
made by Stewart & Stevens, was it not reasonable and
natural for him to say that they had no authority to make
such request, that to comply with it would be to disobey
plaintiff's order to divert to Deal and render defendant
liable? When Stewart & Stevens found that Deal would
not take the chickens, they should have asked plaintiff to
change the order, or have exhibited some evidence to de-
fendant of their authority to change it, and the agreed
statement of facts should show this. Especially is this
true when it is remembered that after plaintiff ordered
defendant to divert the shipment to a different consignee

they became strangers to the transaction and their interference, so far as defendant knew, was no more than that of an interloper. It seems to us that the effective cause of the delay and consequent damage in this case was the negligence of plaintiff in failing to notify defendant that it had given Stewart & Stevens authority to act for it in the premises. And in saying this we have not overlooked plaintiff's point that defendant's freight agent who assented to the order of Stewart & Stevens to redivert the car to them should have notified them when he found he could not do so. The only reason why they could have asked notice would be that they might then have gotten an order from plaintiff. But they knew that defendant did not know they had authority from plaintiff, and it was their duty to have caused knowledge of their authority to have come to defendant and not having done so defendant had a right to treat them as wholly disconnected from the transaction.

In considering what effect the request from Stewart & Stevens to defendant's division freight agent at San Francisco to redivert the car from Oakland to them, should have, it must be remembered that the case rests on an agreed statement of facts which is like a special verdict, and it must contain every essential element, without any omission and without doubt or ambiguity, to support the judgment. [Goben v. Murrell, 190 S. W. 986, following Gage v. Gates, 62 Mo. 412; Car v. Lewis Coal Co., 96 Mo. 149; Hughes v. Moore, 17 Mo. App. 148; Moore v. Henry, 18 Mo. App. 35, 40.] The agreed statement here does not show that the division freight agent at San Francisco had authority to bind defendant to an apparently unauthorized request to divert the shipment from Oakland. If such agent was without authority, then Stewart & Stevens' request to him was no more than if it had not been made. But if it were conceded that this agent's authority would be judicially noticed it would not aid plaintiff.

For the agreed statement of facts being a special verdict which should show, *without doubt or ambiguity, every essential to plaintiff's case,* it must show that Stew-

art & Stevens were agents of the plaintiff owner with authority to countermand the owner's order diverting the shipment to another destination and that defendant knew they were. It does not show such facts and consequently when Stewart & Stevens countermanded plaintiff's order to divert, they, as we have said, were strangers to defendant and the latter did right in ignoring them.

When Stewart & Stevens sold the chickens to Deal, they did not pretend to assert authority to divert the shipment, but communicated with plaintiff who gave the order.

The agreed statement of facts merely shows the naked fact that Stewart & Stevens gave the order countermanding the owner's order. Presumably this was done under the erroneous assumption that they had a right to do it by reason of being original consignees.

We recapitulate the points of failure in plaintiff's case: The freight was originally consigned to Stewart & Stevens, but defendant knew that plaintiff was the shipper and the owner with the exclusive right and authority, by itself or its authorized agent, to divert the shipment to some other destination and consignee. The agreed statement of facts does not show that defendant knew that Stewart & Stevens were plaintiff's agents any further than as simple consignees. The agreed statement does show that they were, in fact, plaintiff's agents with authority to divert, but does not show that defendant had any notice of it. So when plaintiff, as shipper owner, ordered defendant, while the freight was en route, to change destination and deliver to Deal instead of Stewart & Stevens, the latter became strangers to the shipment, wholly without authority over it, so far as defendant knew.

We think the judgment should have been for the defendant and it will be reversed and the cause remanded that it may be so entered. All concur.