**TIME PLANS, INC., a Corporation, Appellant,**

v.

**WORNALL BANK, a Corporation, and Carl Goodhue and Mrs. Carl Goodhue, Respondents.**

No. 24636.

Kansas City Court of Appeals.

Missouri.

June 5, 1967.

Motion for Rehearing and/or Trasfer to Supreme Court Denied Oct. 2, 1967.

Application to Transfer Denied Nov. 13, 1967.

John R. Whitsitt, Kansas City, for appellant.

Donald K. Hoel, Kansas City, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel, for Wornall Bank, respondent.

Shockley, Reid & Koger, by Jim T. Reid, Kansas City, for Carl Goodhue and Mrs. Carl Goodhue, respondents.

MAUGHMER, Commissioner.

■ Plaintiff's suit for damages, both actual and punitive, is in two counts. Count I is based upon alleged conspiracy and Count II upon conversion. After the evidence had been heard the court directed a verdict for defendants on both counts. Plaintiff has duly appealed. The amount of recovery sought was $5,808 actual and $5,000 as punitive damages. Therefore appellate jurisdiction rests with this court.

The present controversy grew out of various transactions concerning a Ferrari automobile. Ferrari automobiles are built by an Italian corporation, are sports or racing cars, and are prized chiefly by those interested in antique vehicles.

The plaintiff, Times Plans, Inc., is an automobile finance company domiciled in Missouri and located in Kansas City. The defendant Wornall Bank is a general banking institution in Kansas City, Missouri. The other defendants, Carl and Mrs. Carl Goodhue, are individuals living in this city.

We shall endeavor to present the pertinent facts in chronological order. Mr. Goodhue is a school teacher, who had a hobby of buying, rebuilding and selling used automobiles, especially those of the antique or classic types. For many years he had been a customer and borrower at the Wornall Bank. In the fall of 1961, he read in an automobile magazine that a Ferrari (described as a 1954 model) was being offered for sale by a Mr. C. B. Johnson, who lived in Colorado. He communicated with Mr. Johnson, met him in Sterling, Kansas, and on October 14, 1961, bought the Ferrari and received an assignment of the Colorado title.

Mr. Goodhue testified that he "misplaced the title", but he got in touch with the seller, who procured and transmitted to him a duplicate Colorado title. Mr. Goodhue later located the original title. The Colorado certificate described the vehicle as a Ferrari, *1952*, Model 340, a roadster, with Motor #0140A.

On November 3, 1961, Mr. Goodhue signed a chattel mortgage for a debt of $2,819.04 to the Wornall Bank covering a 1959 Opel, a 1955 Plymouth, and this Ferrari, but therein described it as a *1954* Ferrari, Motor #0140A. This mortgage was never recorded or filed and bears the stamp mark "canceled by renewal". Thereafter Mr. Goodhue arranged to sell the Plymouth and purchase a 1959 Chevrolet. He again financed through the Wornall Bank and on February 7, 1962, executed to that institution a new chattel mortgage, which covered the 1959 Opel, the recently purchased 1959 Chevrolet and the Ferrari, which was again identified as a *1954* Ferrari, Motor #0140A. The indebtedness on this occasion was $3,674.88. Plaintiff in its brief says this particular mortgage was never filed in the office of the Recorder in Kansas City, Missouri, but that it was filed in the Recorder's office in Independence, Missouri on July 17, 1963. Both of these cities are in Jackson County, Missouri. The certificate attached to the exhibit (photostat of the chattel mortgage) states that it was so filed on July 17, 1963, but there appears further on the exhibit the following stamp:

"Filed this day and date
Feb. 12, 1962, 10 A.M.
Nathan Scarritt, Recorder
By Peg Allen, Deputy".

The next occurrence was the sale of the Ferrari by Mr. Goodhue to a Mr. Wayne Joplin, a resident of Oklahoma. The Colorado certificate of title, executed in blank by C. B. Johnson was delivered to Mr. Joplin by Mr. Goodhue, thereby "jumping" himself in the chain of title. It did not list any indebtedness as outstanding against the automobile. The Wornall Bank was un-

willing to release Goodhue on the obligation even though the new purchaser, Wayne Joplin, assumed it in full. There is some dispute as to just what Mr. Joplin paid for the Ferrari, but it was sold and delivered to him. There was introduced in evidence a third chattel mortgage to Wornall Bank with promissory note attached for $3,674.88 and covering a *1952* Ferrari, Motor #0140A, with both the promissory note and the chattel mortgage purporting to be signed by C. D. Goodhue and Wayne Joplin. Mr. Goodhue testified that they both signed it. Mr. Joplin testified that he did not sign it although "it looked like his signature" and he admitted making 10 or 11 monthly payments of $153.12 each to the Wornall Bank on this indebtedness. This chattel mortgage was never filed of record.

Thereafter, on September 4, 1962, the State of Oklahoma issued to Mr. Wayne Joplin a certificate of title to a *"1961* Ferrari roadster, Motor #0140A". Mr. Joplin testified that he procured this *1961* certificate by filing the *1952* Colorado certificate and some affidavits certifying as to repair and replacement work which had been done on the automobile. Then on December 14, 1962, Wayne Joplin signed a promissory note and chattel mortgage in favor of plaintiff Time Plans, Inc. for the sum of $6,336, and covering a *1961* Ferrari, Motor #0140A. He used the Oklahoma title certificate describing a *1961* Ferrari to procure this loan. Mr. Joplin made some payments on this indebtedness but at the time suit was filed, the sum of $5,808 was still due. This is the sum named by plaintiff in the petition as its actual damages. This mortgage was filed in Oklahoma City and in Benton County, Missouri, where Joplin said he lived.

After making eleven payments (Wornall Bank records show this) Mr. Joplin's check for the twelfth payment was returned marked "Insufficient funds" and Wornall Bank called on Goodhue for payment. The defendants, Mr. and Mrs. Goodhue "took up" or paid off the balance of this debt by refinancing and pledging other and additional collateral on May 15, 1963. The Wornall Bank thereupon assigned the original note and mortgage, purportedly signed by Goodhue and Joplin, to the defendant Mrs. Carl Goodhue and disclaims any interest whatever in the matter after May 15, 1963.

After the assignment of the chattel mortgage and note to her, Mrs. Goodhue instituted a replevin action in Jackson County, Missouri to recover possession of the Ferrari. Aided by officials of Wornall Bank, who had contacts with automobile "locaters", the Ferrari was located in Mangum, Oklahoma. Mr. Goodhue went there, repossessed the vehicle and returned it to Missouri. He testified that its transmission was out, it had a bullet hole in it and the cylinder head was cracked; that he spent $1500 and his time in making repairs, procured a repossessed certificate of title from the State of Missouri, and then sold the Ferrari for approximately $1800. It is undisputed that all of these transactions had to do with one and the same Ferrari automobile, Motor # 0140A. The Colorado title was for a 1952 Ferrari. This particular model was not built after 1954. It could not have been a 1961 product. It is really undisputed that the automobile was a 1952 model, even though it is sometimes referred to as a 1952, 1954 and 1961 Ferrari.

Mr. Dee White, Vice-President of the Wornall Bank, Mr. Hughes Barton, President, and Mr. R. M. Welton, Vice-President of Time Plans, Inc. testified as to the factual occurrences just related. Mr. Barton and Mr. White had telephone conversations about these matters during May, June and July of 1963. At that time each knew of the other's mortgage. White advised that the Ferrari had been located in Oklahoma and asked Barton to join in criminal proceedings against Wayne Joplin. Barton refused. Barton said his company paid one-half of the $50 paid to the Oklahoma sheriff for his help in the recovery, and that White promised to make the car avail-

able to plaintiff after it had been repossessed. In August, 1963, Mr. White told plaintiff's officers that the Wornall Bank was no longer concerned in the matter; that plaintiff had not cooperated, and that he, Mr. White, would furnish no further information. Mr. Welton testified that he told Mr. White that plaintiff wanted its debt balance of $5,808, or wanted possession of the automobile, and were expecting one or the other from the Wornall Bank. He said Mr. White finally told him: "The hell with you". Mr. Welton testified further that they "tried to contact Mr. Goodhue" and that Mr. Goodhue finally called him by telephone. He said Mr. Goodhue stated that "he did have the automobile, but wouldn't tell us where it was and stated that he had a clear title". Mr. Goodhue testified that he sold the car to Wayne Joplin for $3500; that after he repossessed it in Oklahoma he spent $1500 in repair and then sold it for $1800. Plaintiff has never instituted any legal proceedings to (1) recover possession of the Ferrari or (2) except for the instant suit, any action to recover damages or relief of any kind.

Count I of plaintiff's petition alleges: Goodhue failed to register the Colorado title in Missouri; Wornall Bank procured a chattel mortgage, well knowing Goodhue had no valid certificate of title; Wornall Bank allowed and required Wayne Joplin to alter the note and mortgage by adding his name thereto; Mrs. Goodhue filed a replevin suit, alleging she was owner of the said note and mortgage, and said Wornall Bank cooperated and conspired with the Goodhues in all of these things for the purpose of hindering and defrauding plaintiff out of its lawful rights under its chattel mortgage. Plaintiff and all defendants on July 24, 1963, located said Ferrari in Oklahoma and Wornall informed plaintiff the automobile would be made available to plaintiff; all three defendants, acting in concert, concealed said Ferrari from plaintiff with intent to defraud plaintiff although plaintiff has demanded possession; defendants falsely and fraudulently tried to

obtain a duplicate Oklahoma title and by all of these acts hindered, delayed, defrauded and deceived plaintiff to its damage in the sum of $5,808; (amount still due on the Wayne Joplin note) and $5,000 punitive damages. Plaintiff's second count alleged that the Ferrari came into possession of all three defendants on July 27, 1963, and defendants converted same to their use, all in violation of plaintiff's rights.

■ At the close of the evidence counsel for plaintiff, in response to an inquiry from the court, said it wanted to submit the case on the second count of the petition. Did such request result in abandonment of Count I? In White v. Kansas City Public Service Co., 239 Mo.App. 571, 193 S.W.2d 60, 63, this court said:

"It is true if plaintiff alleges several grounds of negligence and then instructs on only one, all others are abandoned; and if the evidence does not support the ground of negligence submitted, then a general demurrer, at the close of the case, will raise that issue".

And in Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 785:

"Such is not the law, for when the plaintiff elected to submit his case solely upon the humanitarian theory he abandoned the other allegations of negligence contained in his petition".

■ This rule of law seems to dispose of Count I of the petition and results in affirming the action of the trial court in directing a verdict for all defendants as to Count I. We observe, too, that the burden is upon plaintiff to establish conspiracy and we doubt if there was substantial evidence adduced showing conspiracy as to these defendants. In its brief plaintiff makes this comment: "It is the position of appellant that Count I adds very little to its cause of action".

Count II of the petition asserts: (1) from and after April 14, 1963, plaintiff was enti-

tled to possession of the Ferrari; (2) on July 27, 1963, the Ferrari, then reasonably worth $5,808, came into the possession of the defendants who converted same to their own use, all to plaintiff's actual damage in the sum of $5,808; (3) defendants' acts were wanton and malicious and plaintiff is entitled to $5,000 punitive damages.

The defendant Wornall Bank closed out its interest in the whole matter on May 15, 1963, when it transferred its mortgage coverage on the Ferrari to Mrs. Carl Goodhue in consideration of a new note and chattel mortgage signed by Mr. and Mrs. Goodhue and pledging additional and other collateral.

Among others, plaintiff invites our attention to the following cases: To Jordan v. Ebert, Mo.App., 387 S.W.2d 255, 257, where the court enumerated the essential elements necessary to make a submissible case for conversion, saying:

"Plaintiff, to make a submissible case for conversion, was required to present evidence (1) of his possession or right to possession at the time of the alleged conversion or an ownership which carries with it the right to immediate possession. Brede Decorating, Inc. v. Jefferson Bank and Trust Co., Mo., 345 S.W.2d 156, 164; (2) of the taking of the property of plaintiff against his will and in open defiance of plaintiff's ownership and right of possession. Detmer v. Miller, Mo.App., 220 S.W.2d 739, 745; Davis v. Nash Central Motors, Mo.App., 332 S.W.2d 475, 480, and (3) damages resulting from the act or acts of conversion".

In this Jordan case plaintiff presented evidence that he was the actual owner and was divested of possession by defendant through threats.

To German-American Bank v. Brunswig, 107 Mo.App. 401, 81 S.W. 461, 462, and this quotation by approval from that opinion:

" 'A conversion may be proved in either of three ways: (1) By tortious taking; (2) by any use, or appropriation to the use, of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) by a refusal to give up possession to the owner on demand. * * * The idea of property is of the essence of a conversion'. Nanson v. Jacob, 93 Mo. 331, 340, 6 S.W. 246, 3 Am.St.Rep. 531".

The court in this case also quoted with approval the following:

" 'To sustain the action, there must be title in the plaintiff and an actual conversion by the defendant. "If either of these elements is wanting, the action will not lie" '. 2 Cook on Corp. (4th Ed.) § 576, and other authorities cited under point 3".

And from Edlen v. Tweed, Mo.App., 295 S.W.2d 397, 402:

"A person in possession of the personal property of another is guilty of conversion when he makes an unfounded claim or assertion of ownership or title thereto, inconsistent with and exclusive of the owner's rights therein".

■ As to the defendant Wornall Bank it never had possession of the Ferrari. It assigned and sold for a valid consideration its mortgage and promissory note to Mrs. Goodhue. In its pleading plaintiff says it was entitled to possession at all times after April 14, 1963. Defendant Wornall Bank has disclaimed any interest in the matter after May 15, 1963. Thereafter plaintiff learned that Goodhue had possession but took no action looking toward recovery. There is no evidence whatever that the Wornall Bank committed conversion of the Ferrari. Therefore the court properly sustained the motion for directed verdict as to it.

We quote from 89 C.J.S. Trover and Conversion, §§ 3, 117, pages 533 and 610:

"Conversion is a tort, a wrongful act, which in the nature of things cannot spring from the exercise of a legal right. The law of conversion, it has been said, is

concerned with possession, not title, conversion being an offense against possession of property.

\* \* \* \* \* \*

"In order to maintain an action for conversion, the plaintiff must show that at the time of the conversion he was in possession of the property, or was entitled to the immediate possession thereof".

■ Clearly plaintiff was never at any time owner of the Ferrari. Was it entitled to possession? Its chattel mortgage of December 14, 1962, and signed by Wayne Joplin provided in part: " \* \* \* if said mortgagee shall at any time deem said mortgage, said chattels, said debt or said security unsafe or insecure, or shall choose to do so \* \* \* said mortgagee at his option, without notice" may take possession and without legal procedure or demand for performance, sell at public or private sale. There is no evidence that plaintiff ever attempted to foreclose, or act under its mortgage. It never owned the chattel, never had actual possession of it and never took any steps, by court action or otherwise, to secure possession, although it knew about defendants' mortgage at a time when Joplin was still in possession, knew that defendant Goodhue had repossessed and was planning to sell.

The opinions in the three cases from which we have quoted and the statements in C.J.S. clearly do not lead to a conclusion that the facts in the instant case constitute a conversion. There is no evidence that plaintiff was ever owner of the Ferrari. Assuming that plaintiff's mortgage covering a *1961* Ferrari with the correct engine number is sufficient to effectively identify the *1952* Ferrari, still plaintiff was not entitled to possession unless and until there was a default (which was proved) and steps taken to foreclose or repossess the security (which was not shown). In many similar instances the mortgagee is willing to rely on the mortgagor to pay, rather than to move against the collateral. A request that defendant Goodhue come in and settle the matter is certainly not a demand for possession. Goodhue concealed none of the facts but rather admitted his possession, asserted his right to possession under the prior mortgage and his right to sell the collateral. Still plaintiff instituted no legal procedure to obtain possession. The undisputed evidence shows that on February 7, 1962, when the Ferrari was pledged to the Wornall Bank, Goodhue was the owner. This mortgage and the promissory note were assigned to Mrs. Goodhue for a valuable consideration (a new note and additional collateral). Joplin had defaulted and Goodhue had the legal right to exercise the mortgage given right of possession. It seems to us therefore that plaintiff did not make a submissible case in conversion because it failed to show the vital elements essential to make a case in conversion. There is no substantial evidence that plaintiff owned the Ferrari; that possession was tortiously taken from it, or that it took any necessary steps by court procedure or otherwise, which would activate or bring into being its latent rights, under its mortgage, to possession. Therefore, the Court did not err in directing a verdict for the defendants Goodhue.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., CROSS and BLAIR, JJ., and L. F. COTTEY, Special Judge, concur.