**Lutricia GLASS, Plaintiff-Respondent,**

v.

**ALLIED VAN LINES, INC., Defendant-Appellant.**

No. 8904.

Springfield Court of Appeals,

Missouri.
Jan. 5, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 2, 1970.

William O. Welman, McHaney & Welman, Kennett, for defendant-appellant.

Eugene E. Reeves, Ward & Reeves, Caruthersville, for plaintiff-respondent.

TITUS, Presiding Justice.

Under her "First Amended Petition in Conversion," plaintiff Lutricia Glass (now Lutricia Shrable) obtained a $4,500 verdict-judgment against defendant Allied Van Lines, Inc., in the Circuit Court of Butler County, Missouri. Defendant has appealed contending that the trial court erroneously instructed the jury and erred in refusing to sustain its motion for a directed verdict because the evidence "failed to establish that plaintiff had given defendant, as a bailee, sufficient notice of her title or paramount claim to the property allegedly converted or that plaintiff had made a sufficient demand on defendant based on her alleged title or paramount claim as opposed to the true bailors." In reference to the last assignment, to which we first attend, the evidence favorable to the plaintiff must be accepted by us as true. Helming v. Dulle, Mo., 441 S.W.2d 350, 352(4).

We essay to recast the pertinent facts in chronological order, but ere that, it is well to note plaintiff's case consisted simply of her testimony and defendant's answer to the single written interrogatory propounded by plaintiff under Civil Rule 56.01, V.A. M.R.; defendant produced one witness. None of the other dramatis personae made appearance at the trial. Although the events in this case occurred in Florida and Maryland, we are content (without so ruling) to consider the appeal upon the same assumption made by the parties, id est, that the law of conversion is the same in the States of Missouri, Florida and Maryland. Service of process was obtained on defendant through the secretary of the public service commission in reliance upon plaintiff's representation that defendant was a motor carrier or contract hauler. § 508.070, V.A.M.S.

In May 1967, without benefit of wedlock, plaintiff began living with one James H. Baker in a Hollywood, Florida, apartment. Baker spent most of his time in Orlando, Florida, but was at the apartment "two or three days at a time or maybe on a weekend." He represented to the 22-year-old plaintiff that he was unmarried, 44 years of age, and had a son named James H. Baker, III. Plaintiff never met the son or a woman identified as Mrs. James Baker or Mary Baker.

As "Mr. and Mrs. James H. Baker," plaintiff and Baker bought a house at 2325 Sherbrook Road in Winter Park, Florida. They moved their personal belongings from the Hollywood apartment to the Winter Park address and "only stayed one night in the [Winter Park] house" before departing, about June 10, 1967, for what was intended to be a one-week stay in Washington, D. C. Plaintiff's absence from Winter Park continued, however, until August 1967.

On June 29, 1967, a Mary Baker called defendant's agent in Orlando to pick up for ultimate moving to Hyattesville, Maryland, all household goods then located at 712 South Lake Davis Drive, Orlando, Florida. Defendant's agent obtained the property, weighing 900 pounds, at the stated address on the same day Mary Baker had called. The inventory of this property was signed by "Mary Baker" and listed "Mrs. James Baker" as the owner. About two days thereafter, defendant's Orlando agent received a call from a Mr. Baker who advised he was Mary Baker's husband. Mr. Baker said that subject to future instructions, he wanted the agent to pick up all items located at his new home in Winter Park and held in Orlando with the property the agent had previously obtained at 712 South Lake Davis Drive in Orlando. The agent was informed that all of the goods were to be sent to Baltimore, Maryland, and that his son, James H. Baker, III, would meet the movers at the Winter Park address. Pursuant to a later call from Mr. Baker, defendant's agent picked up 730 pounds of property at 2325 Sherbrook Road in Winter Park on July 22, 1967. James H. Baker, III, signed the inventory for these goods, and the inventory noted J. H. Baker as the owner. The items that had been obtained by the agent at Orlando and at Winter Park were then hauled to Baltimore under a bill of lading signed by James H. Baker, III, which showed James Baker to be the shipper and the consignee. The shipment arrived in Baltimore on July 24, 1967, and was stored in the warehouse of defendant's Baltimore agent. A telephone call was received by the Baltimore agent on August 3, 1967, from a Mr. Baker who related that he would be in to produce proper identification and that the agent was not to let anyone but him see or take possession of the property.

When plaintiff and Baker returned to Florida in August 1967, plaintiff learned for the first time that defendant "had picked up the stuff" that had been left in the house at Winter Park. Plaintiff, identifying herself as "Mrs. Baker," telephoned defendant's Orlando agent "concerning a shipment made from Florida," and was told "that my things had been

picked up and * * * sent to Baltimore, Maryland, and were being held in storage [and] James H. Baker had signed to have these things picked up [and] that someone would come out and talk to me about this," but no one ever did. Shortly following this, according to the plaintiff, she was taken to Baltimore by Baker against her will.

Two things occurred August 16, 1967: (1) Plaintiff called defendant's Baltimore agent as "Mrs. Baker" to inquire "whether the shipment was there," and was informed that James Baker was the shipper of record and "that Mr. Baker had said not to let anyone have it but him"; (2) Plaintiff and Baker went to the warehouse of defendant's agent in Baltimore "as Mr. and Mrs. Baker * * * to demand back, to recover possession of the goods as Mr. and Mrs. James Baker." The agent was not satisfied with the identification because it was not Baker's "signature that signed to have the things moved," and plaintiff identified herself to the agent as "Lutricia Baker." Before leaving Baltimore about a week later, plaintiff again called the agent "to find out how I would go about getting my things back and they told me * * * the things were being sent back to Winter Park [and that I] would have to * * * get a court order to find out anything that was being held there because they didn't think that I had the proof that the things belonged to me."

Plaintiff's last contact with defendant before suit was filed was in September 1967 when she, as "Mrs. James Baker," called defendant's Orlando agent from a motel in Winter Park, Florida, to inquire when her goods were going to be shipped back from Baltimore. The agent disavowed knowledge of the shipment but said that if it was being made, it should be received in Orlando within a few days.

To complete the picture, Mary Baker (recognized by the agent as a different person than "Lutricia Baker") went to the office of defendant's Baltimore agent on November 1, 1967, presented a signed authorization from James Baker, paid the transportation and storage charges, "and picked up all the goods." Defendant's staff attorney testified that before delivery was made to Mary Baker he was aware of the dispute "concerning the identity of a Mr. and Mrs. Baker that presented themselves at the Baltimore office."

■ Bailment is a contract resulting from the delivery of goods by the bailor to the bailee on condition that they either be restored to the bailor or delivered to someone designated by the bailor, according to the bailor's directions, when the purposes for which the goods are bailed have been answered [Weinberg v. Wayco Petroleum Company, Mo.App., 402 S.W.2d 597, 599 (4); Nuell v. Forty-North Corporation, Mo.App., 358 S.W.2d 70, 75(3)], and a bailee who makes delivery of the goods to a third person without the assent of the bailor, does so at his peril. Crow Contracting Corp. v. George F. Smith Co., Mo. App., 407 S.W.2d 593, 598(7). Possession of personal property is prima facie evidence of ownership [United States v. Kramel, 8 Cir., 234 F.2d 577, 579(1)], so if a bailee receives property in bailment from one in possession, although the possessor is not rightfully entitled thereto, the bailee is not guilty of conversion if he delivers the goods pursuant to the bailment contract, provided the delivery is accomplished before he has adequate notice of the rights of the real owner. Cresswell v. Leftridge, Mo.App., 194 S.W.2d 48, 50(2).

■ Proof of conversion may be made in either of three ways: (1) by a tortious taking, (2) by any use, or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner, or (3) by refusal to give up possession to the owner on demand. Time Plans, Inc. v. Wornall Bank, Mo. App., 419 S.W.2d 491, 495. In the first two instances, supra, the fact of conversion becomes self evident through proof of the overt acts of the converter, and that is

why it has been said that a "demand or refusal, * * * are merely evidential, not creative, and they need not be shown to make out a case of conversion where some other independent act of conversion * * is in evidence." Schulte v. Florian, Mo. App., 370 S.W.2d 623, 625(2). On the other hand, if possession was not acquired by a tortious taking or the possessor does not appropriate or use the property in a fashion to indicate a claim thereto adverse to the owner, then no evidence of a conversion exists until there is proof, first, that a proper demand for possession was made by the one who is entitled thereto and, second, that the possessor wrongfully refused delivery. Consequently, if a bailee's possession is innocent, as where he receives property from the bailor in good faith believing the bailor to be the owner, he is not liable in conversion to a third person who claims the property unless that person asserts a paramount right to immediate possession and makes sufficient demand for the property before the bailee delivers it to the bailor. Nanson v. Jacob, 93 Mo. 331, 342, 6 S.W. 246, 250; Ardisco Financial Corp. v. de Margoulies, 21 A.D.2d 295, 250 N.Y.S.2d 77, 79–80(2–6); 1 Restatement (Second) of Torts, §§ 230 and 235; 8 C.J.S. Bailments, § 56b (2), pp. 580–583.

■ The lamentation voiced in plaintiff's brief that she may have "assumed an unnecessary burden in pleading, proving and instructing on a claim for possession and refusal" (although we question the quality of the proving), will be to no avail here for we only review the case on the same theory upon which it was submitted to the trial court. Grider v. Twin City Fire Insurance Company, Mo.App., 426 S.W.2d 698, 701(6). Therefore, our consideration of the matter proceeds on the assumption that defendant's possession of the property in question was initially proper and that plaintiff had the burden of proving, inter alia, that she made a good and sufficient demand for possession prior to the time that the defendant, as bailee, made delivery of the goods pursuant to the bailment

agreement. 18 Am.Jur.2d, Conversion, § 159, p. 252.

■ To be legally effective as evidence of a conversion, the demand by a stranger to the bailment contract must equate to a plain, unambiguous request for the present delivery of the property, and must be peremptory and clothed in absolute, unequivocal terms. Handlan-Buck Mfg. Co. v. Stave Electrical Co., 184 Mo.App. 247, 271, 168 S.W. 785, 792(7); Wilcox v. Hubbard, 154 Wash. 344, 282 P. 218, 219(3); Cumberland Telephone & Telegraph Co. v. Taylor, 44 Ind.App. 27, 88 N.E. 631, 633(1); 89 C.J.S. Trover & Conversion § 58a, p. 561. Where only a part of the goods is claimed by the third party, a failure to specify the articles demanded has been held to render the demand insufficient (18 Am. Jur.2d, Conversion, § 64, p. 199; cf. St. Louis Fixture & Show Case Co. v. F. W. Woolworth Co., 232 Mo.App. 10, 24, 88 S.W.2d 254, 262), and "[i]n considering the question of defendant's liability, we must judge of its action from the standpoint of its knowledge." Wichita Poultry Co. v. Southern Pac. Ry. Co., 197 Mo.App. 578, 580, 198 S.W. 82–83.

■ All of plaintiff's dealings with the defendant's agents concerned a shipment of goods (part of which plaintiff admittedly did not own) that was consigned to James Baker and had been signed for by and designated as belonging to persons other than the plaintiff. She "always told them [she was] Mrs. Baker [or Lutricia Baker and] never indicated anything else but that [she was] the wife of James Baker." According to her proof, plaintiff never asserted to defendant's agents that she alone had the sole and exclusive right to the possession of the shipment, or any part thereof; she did not once deny the title of James Baker or Mary Baker in and to the property or tell the agents that James Baker and Mary Baker had no right to the possession of the shipment. Neither did the plaintiff ever undertake to specify what particular articles contained in the 1630 pound shipment she was per-

sonally claiming. The only record evidence of a direct and specific demand for possession having been made, is when the plaintiff and Baker "as Mr. and Mrs. James Baker" went to the Baltimore warehouse "to demand back, to recover possession of the goods *as Mr. and Mrs. James Baker.*" (Our emphasis). As stated in Ardisco Financial Corp. v. de Margoulies, supra, 250 N.Y.S.2d at 80(5), "A claim of equivalency of right by a stranger to the bailment contract is not the assertion of a paramount right necessary to justify nondelivery to the bailor."

Defendant's awareness of a dispute related only to "the identity of Mr. and Mrs. Baker that presented themselves to the Baltimore office." As far as the record is concerned, defendant was never apprised that plaintiff, as "Mrs. James Baker" or otherwise, was individually and independently asserting a right to possession paramount to the parties named in the bailment contract or was claiming the shipment adverse to the rights of James Baker or Mary Baker. We find no evidence that plaintiff ever made a plain, unambiguous personal request for the present delivery of the shipment to herself alone or that she, in her own right and adverse to the rights of others, ever voiced a peremptory demand for her alleged property in absolute, unequivocal terms. In the circumstances of this case, plaintiff's general inquiries concerning the status of the shipment and references to the goods as being hers, do not meet the standards prescribed by the authorities to qualify as requests or demands for present delivery of the property in disregard of the bailment. Therefore, there was no evidence of any conversion on the part of the defendant and no circumstance that would render the defendant guilty of conversion when it delivered the shipment in accordance with the terms of the agreement. The trial court should have sustained defendant's motion for a directed verdict in its favor. Accordingly, the judgment nisi for the plaintiff is reversed.

STONE and HOGAN, JJ., concur.